# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 16, 2013 Session

## JAMES GLEN KIRK v. GLORIA TAYLOR KIRK

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000095-08     John R. McCarroll, Judge**

---

**No. W2012-00451-COA-R3-CV - Filed September 6, 2013**

---

This appeal involves the trial court's disposition of Wife's post-judgment motions and re-division of marital property. Following the trial court's entry of the final decree of divorce, Wife filed several post-judgment motions seeking relief from the final decree based on Husband's misrepresentation and concealment of assets prior to the trial court's division of the marital estate. After an extensive period of discovery, the trial court agreed with Wife and concluded that she was entitled to a new division of marital property and relief from the final decree under either Rule 59 or Rule 60 of the Tennessee Rules of Civil Procedure. The trial court further ordered Husband to pay Wife's attorney's fees and expert fees. Husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Rachael E. Putnam and Austin T. Rainey, Memphis, Tennessee, for the appellant, James Glen Kirk.

Lara E. Butler, Memphis, Tennessee, for the appellee, Gloria Taylor Kirk.

## OPINION

### I. Background and Procedural History

In 1987, James Glen Kirk ("Husband") and Gloria Taylor Kirk ("Wife") were married. During the marriage, Husband ran a farming operation focused primarily on the production and sale of various row crop commodities, and Wife worked as a mortgage broker. No minor

children were born of the marriage. Subsequently, in January 2008, Husband filed a complaint for divorce in the Circuit Court of Shelby County. The parties stipulated as to grounds for divorce and all other issues were heard by the trial court beginning on February 23, 2009, and ending on March 2, 2009. Thereafter, on March 26, 2009, the trial court entered its final decree of divorce.

On April 22, 2009, Wife filed a motion to alter or amend the final decree pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. In her motion, Wife raised issues regarding items of personal property, the trial court's valuation and division of Husband's Tipton County Co-op pension, and further asked the trial court to designate which specific items of farm equipment it intended to award to her pursuant to the final decree. On August 4, 2009, while her Rule 59.04 motion was still pending, Wife filed a petition for contempt in which she asserted that Husband refused to pay certain sums awarded to her by the trial court. After conducting a hearing, the trial court dismissed Wife's contempt petition because the final decree had not yet become a final order in light of Wife's pending Rule 59.04 motion.

Shortly thereafter, on August 20, 2009, Wife filed a motion for relief from judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. In her motion, Wife alleged that Husband had misrepresented his assets and committed fraud upon the court based on information she discovered in connection with her contempt petition. Specifically, Wife pointed to a bank statement produced by Husband which reflected that his farm operating account balance on the date of trial was $61,022.04, as opposed to the $4,406.71 amount Husband provided in his Rule 14(D) memorandum that he submitted to Wife and the trial court in accordance with the Shelby County Local Rules. Wife also pointed to the testimony of Husband's banker which was elicited during the hearing on Wife's contempt petition. Husband's banker testified that Husband obtained a line of credit shortly after the entry of the final decree based on his stated net worth of $1,600,751.00. This amount was $388,164.06 more than the value Husband placed on the entire marital estate in his Rule 14(D), and $705,734.00 more than Husband was awarded in the trial court's division of marital property three months earlier. In response, on November 19, 2009, Husband filed a motion for summary judgment in which he addressed the deposits made to his farm operating account during the trial, argued that Wife's allegations of fraud were not plead with specificity, and urged the trial court to conduct a hearing on his motion. An extensive and prolonged period of discovery followed.

As the trial court thoroughly explained in its findings, the following information emerged in post-judgment discovery that was not originally considered by the trial court in its division of marital property:

Extensive discovery has been conducted since the original trial. Wife's expert J. Kenneth Marston, Jr., was originally hired to "assist in determining Glen Kirk's income for the purposes of the divorce, the decree of which was entered on March 26, 2009." Subsequent to the original trial, Mr. Marston was requested to determine if there were assets subject to the division between the parties, but which were not considered at the time of the original divorce proceeding. In his report, Mr. Marston states, "as our Conclusion of Findings section of this report indicates, there appear to be numerous assets which were subject to division between the parties, but which were not considered at the time of the original divorce proceedings."

The Court finds that the items listed in Mr. Marston's report which are affected by "newly discovered evidence" are as follows:

(1) First Citizens Bank account #[XXXXXXX]-Account balance discrepancy

(2) Discrepancies between information disclosed to First Citizens Bank by Husband in connection with loan approval and information disclosed on Husband's 14(D)

(3) 2008 crop proceeds received in 2009

(4) 2008 crop proceeds received in 2008 but not deposited in farm account

(5) Open contract for 2009 crop proceeds

(6) Crop insurance proceeds of $64,137.00 received on 1-1-09 but not deposited into the farm bank account.

**(1) First Citizens Bank account #[XXXXXXX] - Account balance discrepancy**

The actual balance in this account on the trial date of February 23, 2009 was $61,022.04 which includes $45,523.16 paid by Bunge for corn for 2008. Husband's 14(D) stated that the balance of the account was $4,406.71. As noted in the report of J. Kenneth Marston, Jr., ". . . the balance reported by Mr. Kirk in his Rule 14(D) information and subsequently used at trial did not provide a fair representation of the typical balance for this particular bank

account."

## (2) Discrepancies between information disclosed to First Citizens Bank by Husband in connection with loan approval and information disclosed on Husband's 14(D)

Husband signed a financial statement dated January 8, 2009, claiming assets valued at $1,611,000.00. On February 23, 2009, Husband filed his 14(D) claiming assets valued at $l,212,586.94. Husband's 14(D) was incorrectly calculated. The correct calculation should have been $1,441,186.18 which is $169,138.20 less than the financial statement. Husband did not include on his 14(D) the Patronage Dividend valued at $125,000.00 or the cash on hand of $50,000.00.

## (3) 2008 crop proceeds received in 2009

During the December 12, 2008 hearing, Husband testified that he had received all of his 2008 crop proceeds and had no money to carry over to the next year.  The record reflects payments by Bunge as follows:

(1) $45,523.16 for corn from 2008 deposited in the farm account in December of 2008

(2) $29,346.70 for winter wheat from 2008[.] Bunge settlement date 5-04-09

(3) $23,612.50 for cancellation of a 2008 contract for winter wheat[.] Bunge contract cancellation 6-02-09/deposited into Brighton Bank

Husband testified under oath on December 12, 2008, that he had harvested his 2008 crop, sold it to the individuals he normally sold it to, and paid off debts. He further stated that he was not going to be able to carry over any money into the next farm year of 2009. The question and answer on page 72 of the transcript of the hearing of December 12, 2008 are as follows:

Q. Are you going to be able to carry over any money into the next farm year 2009?

A. No, not at this time. I can't see it.

The answer is clearly false. Proof taken subsequent to the trial conducted in February and March of 2009 established that Bunge made the following payments to Husband in 2009 for the 2008 crop year:

(1) $29,346.70 for winter wheat from 2008

(2) $23,612.50 for cancellation of a 2008 contract for winter wheat

Husband testified in his deposition taken in November of 2010 that he was aware of the first deposit for the remaining 2008 corn crop, but denied knowing the source of the second deposit of $29,346.70 for the winter wheat from 2008. The court does not find Husband's testimony credible.

### (4) 2008 crop proceeds received in 2008 but not deposited in the farm account at First Citizen's National Bank #[XXXXXXX]

J. Kenneth Marston, Jr. reviewed Bunge Corporation records finally provided. The records from Bunge showed payments by Bunge of $110,804.60. $110,804.60 in 2008 crop proceeds was not accounted for or disclosed by Husband's 14(D).

A review of Husband's bank records does show a payment of $72,407.26 which was in connection with a payment by Staple Cotton, not Bunge.

### (5) Open contract for 2009 crop proceeds at time of trial

J. Kenneth Marston, Jr. reviewed the Bunge Corporation records finally provided. The records from Bunge showed payments by Bunge of $135,815.35 which were not accounted for or disclosed by Husband's 14(D).

### (6) Crop insurance proceeds of $64,137.00 received on 1-1-09 but not deposited into the farm account

On January 1, 2009, crop insurance proceeds were received from Rural Community Insurance Services in the amount of $64,137.00. The original check received on January 1, 2009, was not deposited into any bank account. Husband held the check and subsequently, on April 2, 2009, exchanged the original check for another cashier's check from First Citizens Bank in the same amount, $64,137.00. Husband could not explain why he did not deposit and

use the $64,137.00 when he received it on January 1, 2009. The Court finds Husband's testimony not credible.

The proof clearly and convincingly establishes that Husband was holding and hiding the $64,137.00 to avoid that amount being included in the division of marital assets at the trial in February and March of 2009. Wife did not have the information to discover these funds until the court ordered the production of the farm ledger used in the operation of the farms on property which was stipulated to be marital property. Husband and his mother, Mary Kirk resisted production of the ledger but ultimately did produce the ledger after the court ordered the production. The original production had pages missing which required the court to conduct hearings on February 18, 2011 and March 1, 2011. Mary Kirk was present and testified. The parties and Mary Kirk agreed on a full disclosure of the farm ledger which revealed payments made by Husband using the crop insurance proceeds which had been hidden from Wife. Husband had produced a blank copy of page 151 in the September 2010 production. On March 10, 2011 page 151 was not blank and showed payments made July 15, 2010 of $22,750.00 to Dandridge. The source of the money for this payment was the $64,137.00 concealed from Wife.

Exhibit 98 shows that Husband did not use the $64,137.00 until July 15, 2010. On July 15, 2010, Husband obtained two "official checks" from First Citizens Bank in the amount of $40,000.00 and $22,750.00, plus cash in the amount of $1,387.50 in exchange for the cashier's check dated April 2, 2009.

Subsequently, on February 18, 2011, Husband responded to Wife's Rule 60.02 motion and argued that it should be denied because there was not a final judgment, and also because Wife failed to plead fraud with specificity. Alternatively, Husband argued that the trial court should treat the motion as one under Rule 59, whereby any relief was subject to the newly discovered evidence rule. Similarly, on February 25, 2011, Husband filed a motion *in limine* in which he argued that any evidence Wife presented in support of her post-judgment motions was subject to the newly discovered evidence rule. Thereafter, in light of the information that emerged in discovery, Wife filed an amended motion to alter or amend or for relief from judgment in which she elaborated on the allegations contained in her previous post-judgment motions. On May 20, 2011, the trial court granted Wife's amended motion to alter or amend or for relief from judgment. On June 1, 2011, the trial court entered an order denying Husband's motion *in limine*. In response, Husband sought an interlocutory appeal of the trial court's order on his motion *in limine* pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. On August 2, 2011, this Court denied Husband's application.

Finally, in September 2011, the trial court conducted a hearing on all of the outstanding motions. On November 29, 2011, the trial court entered its findings of fact and conclusions of law in which it determined that Husband had willfully and fraudulently concealed his assets prior to the divorce trial through inadequate disclosures in discovery and by failing to comply with local rules. Specifically, as noted above, the trial court found that newly discovered evidence regarding Husband's assets had emerged in post-judgment discovery entitling Wife to a new division of marital property. As a result, the trial court concluded that Wife was entitled to relief from the final decree under either Rule 59 or Rule 60 of the Tennessee Rules of Civil Procedure. Thus, the trial court awarded Wife a total judgment in the amount of $210,183.75, comprised of the following sums: (1) $28,307.67 which is 50% of $56,615.33, representing the difference between the actual balance of the First Citizens Bank account at the time of trial and the amount reported on Husband's Rule 14(D) at trial; (2) $26,479.60 which is 50% of $52,959.20, representing payments for winter wheat and the cancellation of a 2008 contract for winter wheat not accounted for or disclosed by Husband in his Rule 14(D); (3) $55,420.30 which is 50% of $110,840.60, representing 2008 crop proceeds not accounted for or disclosed by Husband in his Rule 14(D); (4) $67,907.68 which is 50% of $135,815.35, representing open contracts for 2009 crop proceeds paid by Bunge and not disclosed at trial; (5) $32,068.50 which is 50% of $64,137.00, representing crop insurance proceeds Husband received on January 1, 2009, but did not deposit into a bank account. The trial court further ordered Husband to pay Wife's attorney's fees and expert fees, and refused to award attorney's fees to Husband or Husband's mother, who was not a party to this action. Thereafter, on January 30, 2012, the trial court entered a final judgment which incorporated its findings of fact and conclusions of law and disposed of all outstanding motions. Husband timely filed a notice of appeal to this Court.

## II. Issues Presented

Husband presents the following issues, as restated, for our review:

(1) Whether the trial court erred by awarding Wife post-judgment relief pursuant to either Rule 59.04 or Rule 60.02 of the Tennessee Rules of Civil Procedure,

(2) Whether the trial court erred in failing to require Wife to comply with Rule 56.03 of the Tennessee Rules of Civil Procedure in response to Husband's motion for summary judgment, and in failing to conduct a hearing on Husband's motion for summary judgment,

(3) Whether the trial court erred by awarding attorney's fees and expert

fees to Wife, and

(4)      Whether the trial court erred in failing to award attorney's fees to Husband and Husband's mother, a non-party.

### III. Discussion

### A. Post-Judgment Motions

We begin our discussion by addressing Husband's argument that the trial court erred by awarding Wife post-judgment relief under either Rule 59.04 or Rule 60.02 of the Tennessee Rules of Civil Procedure. As noted above, the trial court concluded that Wife was entitled to relief from the final decree under *either* Rule 59 *or* Rule 60. This conclusion seems to have resulted from the procedural morass created by the parties' numerous post-judgment filings. Therefore, in order to properly analyze Husband's argument, we must clarify the procedural posture of the case at the time the trial court disposed of Wife's post-judgment motions.

Following the trial court's entry of the final decree, Wife timely filed a motion to alter or amend the final decree under Rule 59.04. Thereafter, while Wife's Rule 59.04 motion was pending before the trial court, Wife filed a motion for relief from the final decree under Rule 60.02. At this point in the proceedings, however, Wife was not entitled to relief under Rule 60.02 because the trial court had not yet entered a final judgment. *See Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977). However, the relief sought by Wife based on the newly discovered evidence of Husband's alleged misrepresentations and concealment of assets could also have been the basis for relief under Rule 59.04. Rather than treating Wife's motion as a Rule 60.02 motion, the trial court should have considered its substance and treated it as an amendment to Wife's already pending Rule 59.04 motion. *See Dunlap v. Dunlap*, 996 S.W.2d 803, 812 (Tenn. Ct. App. 1998) ("The law is well-settled that, in ruling on post-trial motions filed by the parties, the courts of this state are required to consider the substance of the motion rather than its form or title.") (citing *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998); *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 421 n.1 (Tenn. Ct. App. 1988); *Thigpen v. First City Bank*, No. 01A01-9603-CV-00095, 1997 WL 351247, at *2 (Tenn. Ct. App. June 27, 1997)). Accordingly, because Wife was not entitled to relief under Rule 60.02, we need only determine whether the trial court erred in awarding Wife relief pursuant to Rule 59.04.

Pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure, a party may file a motion to alter or amend a judgment within thirty (30) days after its entry. Tenn. R. Civ. P. 59.04. As we explained in *In re M.L.D.*, 182 S.W.3d 890 (Tenn. Ct. App. 2005):

The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (overruled in part on other grounds by *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice. *Id.* A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments. *Local Union 760 of Intern. Broth. of Elec. Workers v. City of Harriman*, No. E2000–00367–COA–R3CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec.8, 2000) *perm. app. denied* (Tenn. May 14, 2001), *see Bradley*, 984 S.W.2d at 933 (holding: a Rule 59 motion should not be used to raise new legal theories where motion for summary judgment is pending).

*Id.* at 895. In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, "it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence." *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983) (citations omitted); *see also Barnhill v. Barnhill*, No. 86-101-II, 1986 WL 8280, at *3 (Tenn. Ct. App. July 30, 1986) ("'Facts arising after the trial do not come within the rule of newly discovered evidence.' 58 Am. Jur. 2d New Trial § 167 (1971). 'Newly discovered evidence must be of facts existing at the time of trial.' Wright & Miller, *Federal Practice and Procedure* § 2808 (1973)."). Moreover, as our Supreme Court explained in *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003):

> When additional evidence is presented in support of such a motion, the trial court should consider the factors applicable to a motion to revise a partial summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure: the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration. *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000) ("Cases analyzing Rule 59.04 motions to alter or amend ... offer some guidance in determining the standard for revising non-final orders.").

*Id.* at 721. We review a trial court's decision on whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard. *Id.* (citing *Harris*, 33

S.W.3d at 746).

The trial court granted Wife's Rule 59.04 motion and awarded her relief from the final decree based on its conclusion that she presented newly discovered evidence of the following: (1) First Citizens Bank account balance discrepancy; (2) Discrepancies between information disclosed to First Citizens Bank by Husband in connection with loan approval and information disclosed on Husband's 14(D); (3) 2008 crop proceeds received in 2009; (4) 2008 crop proceeds received in 2008 but not deposited in farm account; (5) Open contract for 2009 crop proceeds; and (6) Crop insurance proceeds of $64,137.00 received on January 1, 2009, but not deposited into the farm bank account. We shall address each in turn.

### (1) First Citizens Bank account balance discrepancy

Before trial, Husband provided Wife with a copy of his bank account statement dated January 30, 2009. According to this statement, Husband's farm operating account balance was $4,406.71. During the trial, which began on February 23, 2009, Husband continued to represent to Wife and the trial court that his farm operating account balance was $4,406.71. After Wife filed her petition for contempt, however, she discovered that Husband's account balance on the first day of trial was $61,022.04, and that he had made deposits to the account weeks before trial totaling $76,137.00.

On appeal, Husband argues that the trial court erred in considering the amounts in his farm operating account because these amounts fail to take into account the debts and expenses related to his farming business. However, a few months before trial in December 2008, Husband testified that he had only $13,000 to his name, had no other funds coming in from the 2008 crop, he was using the remaining funds he had to pay outstanding expenses for 2008, and that he would not be able to carry over any money into the 2009 farm year. Upon review of the record, we are unable to find, and Husband failed to offer, any evidence of outstanding debts or expenses owed at that time which would offset these amounts. Thus, we find no error in the trial court's decision to consider the newly discovered account balance discrepancy in the farm operating account.

In support of the position that Wife should have known that the account balance he disclosed was not correct as of the date of trial, that she could have received the information if she requested it, and that he did nothing wrong by withholding it, Husband provides the following argument in his brief:

Wife had the opportunity to inquire at the time of trial in February 2009 what the bank balance was and had the opportunity to issue the appropriate

-10-

subpoenas to trial had Wife and her counsel desired information. The balance listed on Husband's 14(D) is specifically designated as the balance of January 31, 2009. Husband did not conceal that the balance listed was as of a date other than the trial date.

. . . .

. . . . Wife's counsel was aware that the nature of the account was that of an operating account of a large farm operation into which large amounts of money, both borrowed and earned, were deposited throughout the year, and out of which account large amounts were withdrawn to pay the operational expenses and debts of the farming operation. Hence, Wife and her counsel had all information necessary to know that the balance in the account on January 31, 2009, should not be taken as the balance on the day of trial in light of the information reflected in the historical bank statements. Despite having all such knowledge, Wife's counsel never asked Husband or his bookkeeper, Mary Kirk [his mother], what the balance in the account was on any of the days of the trial or what if any transaction had occurred which might affect said balance.

We find Husband's argument disingenuous.

Pursuant to Rule 26.05(2) of the Tennessee Rules of Civil Procedure, a party has a duty to supplement or amend a prior discovery response if the party "knows that the response was incorrect when made," or the party "knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Tenn. R. Civ. P. 26.05(2). Throughout the trial, Wife and the trial court relied on what they believed to be accurate disclosures, but unfortunately they lacked knowledge of the true balance of Husband's farming account balance. Husband furthered this problem by ignoring his duty to supplement his previous responses which were no longer true at the time of trial. Under these circumstances, Husband's failure to disclose this information undoubtedly falls into the category of knowing concealment. Accordingly, we are unable to conclude that the trial court abused its discretion by considering the account balance discrepancy in granting Wife's Rule 59.04 motion.

### (2) Discrepancies between information disclosed to First Citizens Bank by Husband in connection with loan approval and information disclosed on Husband's 14(D)

-11-

Husband argues that Wife could have easily obtained his January 2009 financial statement at the time of trial had she properly requested it be produced by the bank incident to a subpoena. Husband further argues that Wife should have known that his financial statements always included cash on hand in amounts ranging from $15,000 to $100,000. Husband fails to recognize, however, that it was his own testimony that lead Wife and the trial court to believe he had no other funds at that time. In December 2008, Husband testified that he had only $13,000 to his name, had no other funds coming in from the 2008 crop, and was using the remaining funds he had to pay outstanding expenses from 2008. Once Husband received additional funds such that his original testimony and responses to discovery were no longer true, he had an obligation to inform Wife and the trial court of this information. To do otherwise was tantamount to knowingly concealing assets. Thus, we find no error in the trial court's consideration of these discrepancies in granting Wife's Rule 59.04 motion.

### (3) 2008 crop proceeds received in 2009

As noted above, shortly before trial, Husband testified that he did not expect to receive any other funds from the 2008 crop, and that he would not be able to carry over any money into the 2009 farm year. The trial court found that Husband's testimony was not credible and that his responses to these questions were "clearly false." We must give considerable deference to the trial court's factual findings where issues of credibility and the weight of oral testimony are involved. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999). In response, Husband provides the following argument in his brief:

> Husband having money from the 2008 crop to carry over into the next year is not the same question as asking whether Husband was scheduled to receive payments in 2009 for crops grown in 2008 pursuant to a contract with a third party purchaser such as Bunge. Nor is it the same question as asking whether Husband had any crops from the 2008 harvest which could not be sold at that time due to the sale price of that commodity being too low at that point in time due to the price of the commodity being too low. The question asked of Husband was not related to whether or not he would receive 2008 crop proceeds in 2009 incident to the open contract he held with Bunge.

Despite Husband's arguments to the contrary, the just resolution of domestic disputes involving the financial conditions of the parties is not achieved when litigants take part in gamesmanship instead of seeking the truth. On the contrary, parties and their counsel have a duty to provide truthful information necessary for the trial court to make an equitable distribution of the marital assets. Moreover, we emphasize that of these 2008 crop proceeds

-12-

received in 2009, Husband deposited $23,615.50 into an account opened up by his mother and his girlfriend. Husband offers no explanation of how Wife could have known, or with reasonable diligence could have discovered, this account information without later subpoenaing the accounts of Husband's mother during post-judgment discovery. Therefore, we find no abuse of discretion in the trial court's consideration of these newly discovered proceeds in granting Wife's Rule 59.04 motion.

### *(4) 2008 crop proceeds received in 2008 but not deposited in farm account*

Husband argues that all of the 2008 crop proceeds that he received were reported on his 2008 tax return which was disclosed to Wife and considered by her expert before trial. Husband further argues that a portion of these proceeds were paid to various land owners with whom he had contracts. However, the record clearly provides that some of the 2008 crop proceeds were included on Husband's 2009 tax return, not his 2008 return. Also, while Wife's expert originally believed that a majority of these funds were deposited into Husband's farm operating account in December 2008, Wife's expert explained that documents received in post-judgment discovery indicated that these funds were not deposited into any account, were never accounted for at the original trial in February 2009, and remained unaccounted for at the September 2011 hearing. Furthermore, a representative from Bunge corporation testified that all of the checks totaling $110,840.60, which were identified by Wife's expert, were paid directly to Husband. In light of these findings, we find no abuse of discretion in the trial court's consideration of these funds in granting Wife's Rule 59.04 motion.

### *(5) Open contract for 2009 crop proceeds*

Husband argues that Wife, her counsel, and her expert had possession of the open contract that he executed in January 2009, from which he received payment in October 2009. Although Wife's expert was aware of this contract at the time of trial and included the contract in his initial report to the trial court, after conducting post-judgment discovery, other open contracts surfaced. From these newly discovered open contracts entered into during the parties marriage but not originally disclosed, Husband received payments totaling $135,815.35. Husband fails to address these open contracts in his brief and we are unable to conclude that the trial court abused its discretion by considering these contracts in granting Wife's Rule 59.04 motion.

### *(6) Crop insurance proceeds of $64,137.00 received on January 1, 2009, but not deposited into the farm bank account*

Husband argues that it was Wife's fault that she did not have information regarding his receipt of crop insurance proceeds before trial. In his brief, Husband argues that:

> Mary Kirk, Husband's Mother and the farm's bookkeeper, was deposed on July 18, 2008 at which time she produced a copy of the crop insurance policy. Mary Kirk was also deposed on 2/20/2009, at which deposition, counsel for Wife could have inquired as to what, if any, crop insurance proceeds had been received in 2009, however, no such question was asked. In Husband's February 2009 deposition, counsel for Wife never questioned Husband as to what, if any, crop insurance proceeds he had received. . . .

> If Wife desired to make an issue of crop insurance proceeds received by Husband, Wife had sufficient information and documentation regarding Husband's historical receipt of the same to do so. Wife's failure to assert the position that crop insurance proceeds should be treated as an asset subject to an equitable division by this Court is no one's fault but Wife's.

We respectfully disagree. Husband failed to notify the trial court, Wife, or Wife's counsel that he received these funds weeks before trial. In fact, the trial court found that clear and convincing evidence established that Husband held the funds with the intention of hiding them to avoid having them included in the division of the marital assets. Wife was unable to discover this information until the trial court ordered Husband and his mother to produce the farm ledger used in the farming operations. Notably, the trial court was forced to conduct a hearing regarding the farm ledger because Husband and his mother produced an incomplete copy which was missing pages of relevant information. Thereafter, the entire farm ledger was disclosed and revealed that Husband did not deposit the funds into a bank account after he received them. Instead, Husband held the funds until the trial concluded, and on April 2, 2009, he converted them into a cashier's check. Accordingly, we agree with the trial court's decision to consider the newly discovered crop insurance proceeds in granting Wife's Rule 59.04 motion.

In light of the foregoing, we conclude that the trial court did not abuse its discretion in granting Wife's Rule 59.04 motion based on the new evidence discovered after it entered the final decree. Although our reasoning differs slightly from that of the trial court,[1] this Court may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Shutt v. Blount*, 194 Tenn. 1, 8, 249 S.W.2d 904, 907 (1952); *In re Estate of*

---

[1]Specifically, we declined to address the issue of fraud as a basis for post-judgment relief because Wife was not entitled to relief under Rule 60.02.

*Jones*, 183 S.W.3d 372, 378 n. 4 (Tenn. Ct. App. 2005); *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 577 (Tenn. Ct. App. 2003).

## B. Summary Judgment

Next, Husband argues that the trial court erred in failing to require Wife to comply with Rule 56.03 of the Tennessee Rules of Civil Procedure in response to his motion for summary judgment. A trial court's decision to grant or deny a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). As such, "we must freshly determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1997) (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44–45 (Tenn. Ct. App. 1993)).

Husband argues that Wife was required to comply with Rule 56.03, she failed to do so, and as a result the trial court should have granted his motion for summary judgment. Rule 56.03 provides, in part, that:

> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

> In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

> If the non-moving party has asserted additional facts, the moving party shall be allowed to respond to these additional facts by filing a reply statement in the same manner and form as specified above.

Tenn. R. Civ. P. 56.03. Husband's argument, however, fails to consider Rule 56.06, which provides that "[i]f the adverse party does not so respond, summary judgment, *if appropriate*,

shall be entered against the adverse party." Tenn. R. Civ. P. 56.06 (emphasis added). Read in conjunction with the standard for granting summary judgment in Rule 56.04, summary judgment is appropriate *only* where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "As the federal advisory committee explained, 'Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-4[q], at 9-82 (3d ed.2009) (quoting Fed. R. Civ. P. 56(c), Advisory Committee Note (1963)).

In his motion for summary judgment, Husband argued, *inter alia*, that Wife failed to plead fraud with specificity and that she was not entitled to post-judgment discovery. In support of his motion, Husband filed an affidavit detailing the amounts he deposited into his bank account in the weeks leading up to trial. Specifically, Husband stated in his affidavit that he deposited $76,137.00 in the account between February 2 and February 9, 2009. Husband's affidavit also provided that he made a $45,000 deposit on February 9, 2009. At trial, however, Husband did not inform Wife or the trial court of these deposits. Husband's statements in his affidavit created a genuine issue of material fact regarding his fraudulent concealment of assets. As a result, summary judgment was not appropriate. Therefore, we affirm the trial court's denial of Husband's motion for summary judgment.

Additionally, Husband argues that the trial court erred in failing to conduct a hearing on his motion for summary judgment before ruling on Wife's post-judgment motions. However, in Tennessee, trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts, and we will not second-guess a trial court's exercise of that authority unless it has acted unreasonably, arbitrarily, or unconscionably. *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003). We are unable to say that the trial court abused its discretion in failing to conduct a hearing on Husband's motion for summary judgment before it addressed Wife's post-judgment motions.

### C. Attorney's Fees and Expert Fees

### *1. Wife's Fees*

Husband argues that the trial court erred by awarding attorney's fees and expert fees to Wife. In its final order, the trial court concluded as follows regarding Wife's fees:

> Wife is entitled to expert fees and attorney fees. The expert fees and attorney fees are reasonable and were necessarily incurred because of

Husband's disregard for court ordered discovery and his refusal to supplement and/or amend responses to discovery. Husband was not only evasive and incomplete in answering questions, but also misrepresented his assets at the time of trial and subsequently evaded answering questions about his assets until after the original trial in February and March of 2009. Wife was forced to issue subpoenas to banks, including First Citizens Bank and Brighton Bank. Wife was likewise forced to subpoena records from Bunge, an entity which buys farmers crops, and Tipton County Co-op.

Rule 37.02 and 37.03 of the Tennessee Rules Of Civil Procedure allows the court to award reasonable expenses, including attorney fees, caused by the failure of Husband to comply with orders of the court regarding discovery. Wife's attorney has submitted an affidavit regarding her attorney fees. There is no dispute that the charges made are reasonable and in line with attorney fees charged in the Memphis, Shelby County legal community. The court further finds that Wife's attorney fees are in line with Tennessee Supreme Court Rule 8; RPC 1.5: Fees. Wife's lawyer, Lara Butler, a well respected and experienced attorney, was required to expend a great deal of time and effort in discovering the Husband's assets because of Husband's willful and fraudulent concealment. The operation and record keeping regarding the farms (which were stipulated to be marital property) was convoluted, confusing, and complex. Wife was required to hire an expert, J. Kenneth Marston, Jr., to explain the operation and record keeping regarding the farms. J. Kenneth Marston, Jr.'s fees were not disputed as to amount charged.

An award of attorney's fees in divorce cases is left largely to the discretion of the trial judge. *Butler v. Butler*, 680 S.W.2d 467, 469-70 (Tenn. Ct. App. 1984). "Appellate courts should not interfere with the trial court's decision except when there is a clear showing that the trial court, in its discretion, reached the wrong conclusion with the result that a manifest injustice will be done if the trial court's decision is allowed to stand." *Id.* at 470 (citing *Crouch v. Crouch*, 53 Tenn. App. 594, 385 S.W.2d 288, 293–294 (1964); *Raskind v. Raskind*, 45 Tenn. App. 583, 325 S.W.2d 617, 622–623 (1959); 24 Am. Jur. 2d *Divorce and Separation* § 625 (1983)). Moreover, Rule 37.03 provides for the imposition of sanctions, including reasonable attorney's fees and expenses, for failing to supplement or amend discovery requests as required under Rule 26.05. *See* Tenn. R. Civ. P. 37.03. Upon thorough review of the record, we find no error in the trial court's award of attorney's fees and expert fees in favor of Wife. Wife incurred these fees and expenses as a result of Husband's actions. Husband has failed to show any abuse on behalf of the trial court. Accordingly, we affirm the trial court's award of attorney's fees and expert fees in favor of Wife.

### 2. Husband's Fees and Husband's Mother's Fees

Finally, we shall address whether the trial court erred in failing to award attorney's fees to Husband and Husband's mother, a non-party. In light of our discussion above, we find no error in the trial court's refusal to award attorney's fees to Husband, and we are unable to find any basis to award attorney's fees to Husband on appeal.

Husband argues that the trial court erred in failing to award his mother, a non-party, her attorney's fees. In support of this position, Husband relies on the "tort of another doctrine" theory. According to Husband, "[a] number of jurisdictions, including Tennessee, have recognized the 'tort of another doctrine' which allows a party to recover attorney fees when he or she has been forced into litigation with a third party as the result of the defendant's wrongful or tortious conduct." *Evans v. Young*, No. 01A01-9711-CV-00638, 1999 WL 11510, at *4 (Tenn. Ct. App. Jan. 14, 1999) (citations omitted). While we acknowledge the existence of this doctrine, we do not find it applicable to this case. Wife's conduct throughout the proceedings below was far from wrongful or tortious. On the contrary, Husband and his mother, as bookkeeper of Husband's farming operation, were far from cooperative during post-judgment discovery. In fact, as noted above, in response to the trial court's order to produce a copy of the farm ledger to Wife during post-judgment discovery, Husband and his mother produced an incomplete copy which was missing pages of relevant information. Thus, we find no merit in Husband's argument. Accordingly, we agree with the trial court's refusal to award attorney's fees to Husband's mother, who was not a party.

### IV. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, James Glen Kirk, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-18-