IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2018 Session

## RICHARD E. MACK ET AL. v. COMCAST CORPORATION ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004954-14  Felicia Corbin Johnson, Judge**

———————————————————

**No. W2017-02326-COA-R3-CV**

———————————————————

An altercation between the residents of a home and alleged Comcast employees occurred when the alleged employees attempted to recover an unreturned modem from the residents after their service had been cancelled.  The residents brought suit alleging several claims against multiple Comcast entities.  Several of the entities were previously dismissed from the case. The trial court granted summary judgment to the remaining Comcast entity-defendants, having concluded that they had established that the alleged tortfeasors were independent contractors of a separate third party entity, and, as a result, the Comcast entities could not be liable.  For the reasons discussed below, we affirm the judgment of the trial court and remand this case for such further proceedings as may be necessary and are consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellant, Richard E. Mack and Carol T. Mack.

Jeffrey E. Nicoson and Tracy A. Overstreet, Memphis, Tennessee, for the appellees, Comcast Corporation and Comcast of Arkansa/Florida/Louisiana/Minnesota/Tennessee, Inc.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Richard Mack and Carol T. Mack (together, "Appellants") initiated this litigation on November 24, 2014, against Comcast Corporation ("Comcast Corp."), Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc. ("Comcast AFLMMT, Inc."), Comcast of Kentucky/Tennessee/Virginia, LLC ("Comcast KTV, LLC"), Comcast of Michigan/Mississippi/Tennessee ("Comcast MMT"), Comcast of Tennessee, LP ("Comcast Tennessee"),[1] Anthony Pinedo, John Doe Agent Supervisor,[2] Jane Doe Agent's Employee, and "DOES 1-10 consisting of entity-persons by and through which Comcast does business involving acts/omissions."

According to the initial complaint, the events giving rise to Appellants' claims occurred on August 29, 2010, at Appellants' residence. It is undisputed that on August 29, 2010, Mr. Pinedo went to Appellants' residence in an attempt to retrieve a modem allegedly owned by a Comcast entity that Appellants had allegedly failed to return after their service had been cancelled for nonpayment. Appellants averred that Mr. Mack "instructed Comcast Corp. and/or one or more of the Comcast Entity-Persons, by and through Agent Pinedo, to remain off [Appellants' property]." Appellants' complaint states that Mr. Pinedo entered the residence despite Mr. Mack's warnings. According to Appellants, a physical confrontation then ensued inside the residence. Next, Appellants averred that Mr. Mack grabbed a shovel to compel Mr. Pinedo to leave the residence, but, according to Appellants, Mr. Pinedo was never actually struck by the shovel. However, while backing out of the house, Mr. Pinedo allegedly fell off the front porch of the residence. Mr. Mack then allegedly ordered a neighbor to "call 9-1-1 because the 'cable man' had broken into the Residence and assaulted Mr. Mack and Mrs. Mack."

The police arrived, and Mr. Mack was eventually arrested because Mr. Pinedo allegedly told the police officers that Mr. Mack had struck him with the shovel. Meanwhile, the complaint alleges that Richard Bradley,[3] Mr. Pinedo's alleged supervisor, arrived and began "yelling, banging [on the Macks' door], and demanding" that he be allowed in to retrieve the modem allegedly owned by an unspecified Comcast entity. The complaint avers that Ms. Mack responded through the locked front door that she did "not know where the internet box was." This confrontation allegedly caused Ms. Mack extreme emotional distress. Mr. Mack alleges that his mugshot was published, and

---

[1] On August 23, 2017, by voluntary nonsuit, Defendants Comcast MMT, Comcast Tennessee, and Comcast KTV, LLC, were dismissed.

[2] The person identified as a "supervisor" in the original complaint was later determined to be Richard Bradley.

[3] Mr. Bradley was named in the initial complaint as "John Doe."

consequentially, he was terminated from his employment. The charges against Mr. Mack were ultimately dismissed. Appellants sought damages and asserted claims for criminal trespass, assault, battery, false arrest, malicious prosecution, intentional infliction of emotional distress, and civil conspiracy.

On January 9, 2015, Comcast Corp., Comcast AFLMMT, Inc., Comcast KTV, LLC, Comcast MMT, and Comcast Tennessee answered, denying all liability. On April 27, 2017, Appellants filed a motion to amend their complaint with a proposed amended complaint attached.

On May 30, 2017, Comcast Corp., Comcast AFLMMT, Inc., Comcast KTV, LLC, Comcast MMT, and Comcast Tennessee filed a motion for summary judgment. The movants averred that "Comcast utilizes outside vendors to attempt recovery when delinquent customers" do not return cable equipment. Specifically, the movants averred that the persons alleged to be Comcast employees by the Appellants were actually "independent contractors for a separate entity that was an independent contractor for Comcast." Therefore, according to Comcast Corp., Comcast AFLMMT, Inc., Comcast KTV, LLC, Comcast MMT, and Comcast Tennessee, the entities could not be held liable for the actions of the alleged tortfeasors. In support of the motion, Comcast Corp., Comcast AFLMMT, Inc., Comcast KTV, LLC, Comcast MMT, and Comcast Tennessee filed a memorandum of law, a statement of undisputed material facts, the declaration of Darren Rish, and the affidavit of Marilyn Appeldoorn.

In her affidavit, Ms. Appeldoorn averred that she was the business manager of Cable Equipment Services, Inc. ("CES") at all times relevant to this appeal. She testified that CES handled equipment retrieval for Comcast Cable Communications, LLC. Ms. Appeldoorn stated that at the time of the incident at Appellants' residence, CES and Comcast Cable Communications, LLC had an active "Equipment Recovery Services Agreement," a copy of which was attached as "Exhibit A" to her affidavit. Ms. Appeldoorn averred that CES was an independent contractor for Comcast Cable Communications, LLC, and CES "had full discretion in how it went about conducting equipment retrieval efforts" for Comcast Cable Communications, LLC. Ms. Appeldoorn also testified that CES used independent contractors as retrieval contractors to retrieve or attempt to retrieve equipment of Comcast Cable Communications, LLC. Mr. Pinedo and Mr. Bradley, the alleged tortfeasors, were allegedly independent contractors of CES, and their "independent contractor" agreements were attached to Ms. Appeldoorn's affidavit as "Exhibit B" and "Exhibit C." Although Appellants filed "responses" to the motion for summary judgment the day before the scheduled summary judgment hearing, they did not file a response to the statement of undisputed material facts submitted by the Comcast entities.

On August 4, 2017, after a hearing, the trial court entered an order granting Appellants' motion to file a first amended complaint. The same day, Appellants filed

their "First Amended Complaint for Civil Conspiracy Including Torts and for Punitive Damages." The first amended complaint named the following defendants: Comcast Corp., Comcast AFLMMT, Inc., Terry Kennedy d/b/a Comcast Cable Memphis, Trevor Yant d/b/a Comcast AFLMMT, Inc., Anthony Pinedo d/b/a Comcast Cable Memphis, Richard C. Bradley d/b/a Comcast Cable Memphis, Chuck Appeldoorn d/b/a CES, Marilyn Appeldoorn d/b/a CES, CES, Comcast Cable Communications, LLC, Comcast Cable Communication Management, LLC, Female Doe, and Does 1-10.

On August 10, 2017, Comcast Corp., Comcast AFLMMT, Inc., Comcast KTV, LLC, Comcast MMT, and Comcast Tennessee filed a motion to strike the first amended complaint. The aforementioned Defendants averred that opposing counsel had not filed the proposed amended complaint that had been approved by the trial court, but, instead, Appellants had filed a completely new complaint with an additional twenty pages of allegations and eight new defendants.[4]

On August 12, 2017, Appellants filed "Plaintiffs' Second Motion to Amend Complaint and Memorandum in Support." On August 23, 2017, the trial court granted the motion to strike the first amended complaint. On August 23, 2017, Defendants Comcast MMT, Comcast Tennessee, and Comcast KTV, LLC, were voluntarily dismissed.

On September 5, 2017, Comcast Corp. and Comcast AFLMMT, Inc. filed a response in opposition to Appellants' second motion to amend their complaint. However, the trial court granted Appellants' second motion to amend the complaint on September 28, 2017.[5]

After a hearing, on October 31, 2017, the trial court entered an order granting Comcast Corp. and Comcast AFLMMT, Inc.'s motion for summary judgment. The trial court's order was certified as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, and this timely appeal followed.

---

[4] Specifically, the Defendant entities averred:

Words do not do justice to describe the differences between what was proposed to be filed and what was filed. The filed First Amended Complaint **adds eight new defendants, over twenty pages of new allegations, a new negligence cause of action, and a new theory of the case** that Comcast engaged in an elaborate, illegal subterfuge through contracts with its independent contractors regarding recovery of Comcast equipment that customers, Plaintiffs included, refused to return. (emphasis in original).

[5] The motion to amend was denied in certain respects, however, as "[Appellants'] counsel orally modified and excluded [certain] Defendants from the motion."

As we perceive it, there is one dispositive issue on appeal:

- Whether the trial court erred in granting summary judgment to Comcast Corp. and Comcast AFLMMT, Inc. (together, "Appellees").

## STANDARD OF REVIEW

A trial court's decision to grant or deny a motion for summary judgment presents a question of law. *Kirk v. Kirk*, 447 S.W.3d 861, 874 (Tenn. Ct. App. 2013). Therefore, our review is *de novo*, and the trial court's decision is afforded no presumption of correctness. *Id*. (citation omitted). Accordingly, we must make a fresh determination of whether the requirements for summary judgment have been satisfied. *Id*. (citation omitted).

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Tenn. R. Civ. P. 56.04). "The moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that summary judgment is appropriate as a matter of law." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "When the party moving for summary judgment will not have the burden of proof at trial, it may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rogers v. Hadju*, No. W2016-00850-COA-R3-CV, 2017 WL 1077059, at *3 (Tenn. Ct. App. Mar. 22, 2017) (citation omitted). "If the moving party fails to meet its initial burden of production, then the nonmoving party's burden is not triggered, and the court should dismiss the motion for summary judgment." *Id*. (citation omitted).

"Tennessee Rule 56 clearly states that when a summary judgment motion is 'supported as provided in [Tennessee Rule 56],' the nonmoving party 'may not rest upon the mere allegations or denials of the [nonmoving] party's pleading,' but in response, 'by affidavits or as otherwise provided in [Tennessee Rule 56], must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.'" *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 262 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.06). However, when "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied

even if no opposing evidentiary matter is presented." *Kirk*, 447 S.W.3d at 874 (citation omitted).

## DISCUSSION

"[T]he doctrine of respondeat superior permits the master/principal to be held liable for the negligent actions of his servant/agent." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (citation omitted). In *Tucker v. Sierra Builders*, we discussed respondeat superior, explaining as follows:

> To hold a principal liable for the acts of another, a plaintiff must prove (1) that the person causing the injury was the principal's agent and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred. Determining whether a principal-agent relationship exists requires a careful analysis of the facts. The Tennessee Supreme Court has held that the following factors should be considered when determining whether a person is an agent or an independent contractor: (1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) the self-scheduling of work hours, and (7) the freedom to render services to other entities. The most indicative factor is the right to control the conduct of the work. Control is a key element in the creation of a principal-agent relationship.

*Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005) (internal citations omitted).

In this case, the trial court was tasked with determining whether to grant summary judgment based upon Appellees' motion for summary judgment, memorandum in support of the motion for summary judgment, statement of undisputed material facts, the declaration of Mr. Rish, the affidavit of Ms. Appeldoorn, and the exhibits attached to the declaration and affidavit. The trial court concluded that Appellees had established that Mr. Pinedo and Mr. Bradley were independent contractors of CES, and CES was an independent contractor of "Comcast." Based on these determinations, the trial court concluded that Comcast Corp. and Comcast AFLMMT, Inc. had established they were entitled to judgment as a matter of law.

For the following reasons, we agree that Comcast Corp. and Comcast AFLMMT, Inc. were entitled to relief. Through their summary judgment filings, Appellees established that the named tortfeasors alleged to have acted on their behalf, Mr. Pinedo and Mr. Bradley, were acting as independent contractors for another entity at the time

relevant to Appellants' claims. In support of this position, Appellees relied in part on the affidavit of Ms. Appeldoorn, which states in relevant portion as follows:

2. I was the Business Manager for Cable Equipment Services, Inc. ("CES"). CES, which closed and ceased operating in November 2015, used to handle equipment retrieval for cable service providers in various markets. CES handled equipment retrieval for Comcast Cable Communications, LLC . . . in certain markets, including Memphis, Tennessee.

3. CES and Comcast entered into an Equipment Recovery Services Agreement (the "Comcast Agreement") on August 25, 2005. This contract automatically renewed on a yearly basis. The Comcast Agreement was in full force and effect on August 29, 2010. A true, correct, and accurate copy of the Comcast Agreement is attached and incorporated herein as Exhibit A.

4. CES was an independent contractor for Comcast and had full discretion in how it went about conducting equipment retrieval efforts.

5. Comcast required that each contractor used by CES had to pass a background check and a drug screen. The retrieval contractor had to wear a badge identifying himself or herself as a "contractor" for Comcast, and the retrieval person had to place magnetic signs on vehicles that identified the person as a contractor for Comcast.

6. Comcast issued the badges yearly, which had to be returned to Comcast once the badges had expired or if the person was done working with CES. Each CES retrieval contractor had to pay Comcast for the badge if the badge was not returned. For the magnetic signs, CES bought the signs from Comcast and then sold those signs to the retrieval contractors for the same amount.

7. Background checks were performed by an outside business entity and the cost of each check varied based on each individual contractor's circumstances. CES initially paid the background check entity and then collected that amount from the contractors. Comcast did not conduct the background checks.

8. CES received a weekly report from Comcast of Comcast customers who had a "full tap" disconnect of services and had not returned equipment. This report covered all markets where CES provided equipment retrieval services for Comcast. CES broke the list down by market and sent a market-specific listing to that specific market for further processing. For

Memphis, that list was sent to Richard Bradley ("Bradley"). Bradley, who served as a market contractor, then further divided up the Memphis listings by ZIP code.

9. CES used independent contractors as retrieval contractors to retrieve or attempt retrieval of Comcast equipment at the addresses provided. Each contractor worked in various ZIP codes. Retrieval contractors had discretion in how they went about attempting retrieval. The limitations were he or she could not violate the law and could not contact someone before 8:00 AM or after 9:00 PM.

10. Retrieval contractors were allowed to organize and operate their retrieval attempts as they saw fit. CES did not set the routes retrieval contractors took on collection attempts. The contractors controlled their own routes. Retrieval contractors were paid for each piece of equipment retrieved. They received a specific amount based on the type of equipment that had been retrieved.

11. There was no set timeframe for retrieval efforts. Retrieval contractors had discretion on the number of attempts to be made. If a retrieval contractor felt the equipment could not be retrieved at a certain location, he or she could turn in the receipt to CES. CES then combined those receipts together and returned those to Comcast. For unretrieved items, Comcast would then bill the accounts of those former customers for the value of the equipment and send those accounts to a collection agency.

12. Anthony Pinedo ("Pinedo") worked in various ZIP codes, including the 38115 ZIP code in Memphis, Tennessee, on August 29, 2010. Pinedo was an independent contractor for CES. He and CES entered into an Agreement for Services from Independent Contractor (the "Pinedo Agreement") on or about February 17, 2010. The Pinedo Agreement was in full force and effect on August 29, 2010. A true, correct, and accurate copy of the Pinedo Agreement is attached and incorporated herein as Exhibit B.

13. Richard Bradley was also an independent contractor for CES. He and CES entered into an Agreement for Services from Independent Contractor (the "Bradley Agreement") on or about January 30, 2008. A true, correct, and accurate copy of the second page of the Bradley Agreement is attached and incorporated herein as Exhibit C.

14. CES has not been able to locate a complete copy of the Bradley Agreement. The same agreement form was used for both Bradley and

- 8 -

Pinedo. The first page of the Bradley Agreement matched, word-for-word, the first page of the Pinedo Agreement with the only difference being Richard Bradley's name being included instead of Anthony Pinedo's.

15. On August 29, 2010, Pinedo went to the residence of Richard Mack . . . to retrieve a EMTA modem (the "modem"). Richard Mack had not returned the modem after his Comcast services had been disconnected.

16. On August 29, 2010, Pinedo contacted Bradley and advised that Richard Mack had assaulted him outside the Mack residence with a shovel while Pinedo was attempting to retrieve the modem. Bradley went to the Mack residence to check on Pinedo and reported to CES on what he learned.

17. No Comcast employees or personnel were involved in or present for the altercation at the Mack residence on August 29, 2010.

Although Appellees submitted evidence establishing that Mr. Pinedo and Mr. Bradley were working as independent contractors for CES with respect to the events in question, Appellants never responded to Appellees' statement of undisputed material facts regarding this or offered countervailing evidence to defend against the motion for summary judgment. This was fatal, because in our view, Appellees' summary judgment filings triggered Appellants' burden to respond. As we have already noted, if a motion for summary judgment is properly supported under Rule 56 of the Tennessee Rules of Civil Procedure, "the nonmoving party 'may not rest upon the mere allegations or denials of the [nonmoving] party's pleading,' but in response, 'by affidavits or as otherwise provided in [Tennessee Rule 56], must set forth specific facts showing that there is a genuine issue for trial.'" *See Rye*, 477 S.W.3d at 262 (quoting Tenn. R. Civ. P. 56.06).

In this case, the link to Appellees' liability is dependent on the actions of the alleged individual tortfeasors. Indeed, Appellees' liability in the original complaint is contingent on supposed agency relationships and the actions taken by these agents. Absent the existence of agency relationships in the context of the events at issue, however, the basis for Appellees' liability is nonexistent. The law is clear that in order to hold a principal liable for the acts of another, a plaintiff must prove that the person causing the injury was the principal's agent. *Tucker*, 180 S.W.3d at 120 (citations omitted). Accordingly, in order to recover against Appellees for the actions of Mr. Pinedo and Mr. Bradley, Appellants would have the burden of proof at trial to show that these individuals were employees or agents of the Appellees at the time of the altercation in this case. Conversely, if it is determined that Appellees negated this element in their motion for summary judgment, Appellants' claims vis-à-vis Appellees fail given their failure to offer any countervailing evidence.

Here, upon careful review of the record, it is clear that Appellees' summary judgment filings negated the basis for liability relied upon by Appellants. Appellees established that Mr. Pinedo and Mr. Bradley were working as independent contractors for CES at the time of the events in question, and the reasonable conclusion from this established fact is that they were not working as agents or employees of Appellees at the time. In order words, by establishing that the alleged tortfeasors were working for CES as independent contractors with respect to the events at issue, Appellees negated the proposition that the alleged tortfeasors were working on their behalf. If Appellants disputed this, it was incumbent on them to submit evidence showing that the fact was of genuine dispute. Our Supreme Court's direction in *Rye* is clear that, when a properly supported motion for summary judgment is made, the "nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265. "The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced . . . at a future trial." *Id.* Here, Appellants did not respond to Appellees' statement of undisputed material facts, and they did not marshal any evidence controverting the established fact that the individual tortfeasors were working as independent contractors for CES at the time of the events in question. Because Appellants did not demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in their favor, summary judgment was properly entered on behalf of Appellees. *See id.* (noting that "summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial").

## CONCLUSION

For the aforementioned reasons, the judgment of the trial court granting summary judgment to Appellees Comcast Corp. and Comcast AFLMMT, Inc. is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

- 10 -