IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2015 Session

## CEOLA JOHNSON, INDIVIDUALLY AND ON BEHALF OF WILLIE JOHNSON, JR. v. UHS OF LAKESIDE, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT00056414     James F. Russell, Judge**

_____

**No. W2015-01022-COA-R3-CV – Filed December 23, 2015**
_____

Plaintiff filed a health care liability action on behalf of her deceased husband. Plaintiff provided pre-suit notice more than one year after the cause of action accrued and subsequently filed a complaint. Defendant filed a motion to dismiss based on the applicable one-year statute of limitations. Plaintiff argued that her husband had been "adjudicated incompetent" within the meaning of Tennessee Code Annotated Section 28-1-106 and that the statute of limitations was accordingly tolled. The trial court dismissed Plaintiff's case with prejudice finding that the statute unambiguously required a judicial adjudication of incompetency in order to toll the statute of limitations, and Plaintiff's husband had not been judicially adjudicated incompetent within the meaning of the statute at the time the cause of action accrued. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Robert L.J. Spence, Jr., Regina Guy, and E. Lee Whitwell, Memphis, Tennessee, for the appellant, Ceola Johnson, Individually and on behalf of Willie Johnson, Jr.

Ashley D. Cleek and John O. Alexander, IV, Jackson, Tennessee, for the appellee, UHS of Lakeside, LLC.

**OPINION**

**Background**

On July 20, 2012 at 7:55 p.m., Willie Johnson, Jr., was involuntarily admitted to Defendant-Appellee's facility, Lakeside Behavioral Health System ("Appellee" or "Lakeside"). Just prior to Mr. Johnson's admission, Judd Carey, a Licensed Clinical Social Worker, executed a "Certificate of Need for Emergency Involuntary Admission" pursuant to Title 33 of the Tennessee Code.[1] The next day, on July 21, 2012, Dr. Amos Raymond, M.D., executed a second Certificate of Need.[2] The certificates both provide that Mr. Johnson was "confused, disoriented, aggressive towards his wife, unable to take care of basic needs, tried to choke wife, poor insight and judgment[, h]istory of dementia[, d]angerous to self and others." Mr. Johnson was eighty-four years old at the time he was admitted.

Later in the day on July 21, 2012, Mr. Johnson allegedly became agitated when a worker at Lakeside attempted to take his blood pressure while he was standing. He allegedly pulled away from the worker and fell to the floor, injuring his hip. Although his initial x-rays were read to be negative for fractures, Mr. Johnson continued to indicate that he was in pain for the next several days.

On July 23, 2012, the Shelby County General Sessions Court entered an Order Admitting Mr. Johnson for Emergency Diagnosis and Treatment.[3] Considering the allegations made in both of the Certificates of Need, the general sessions court concluded that "there is probable cause to believe that [Mr. Johnson] is subject to admission under [Tennessee Code Annotated Section 33-6-403]."[4] The court also ordered that a probable cause hearing be held on July 27, 2012. The probable cause hearing never occurred.

---

[1] *See* Tenn. Code Ann. § 33-6-404 (2), (3)(B).

[2] *See* Tenn. Code Ann. § 33-6-426 (providing that, if the person who executes the first Certificate of Need is not a licensed physician, then only a licensed physician may execute the second Certificate of Need).

[3] Although referenced throughout the proceedings before the trial court, this order does not appear to have been entered in the record until Appellant filed a motion to alter or amend the trial court's dismissal of her case.

[4] Section 33-6-403 provides:

> IF AND ONLY IF
> (1) a person has a mental illness or serious emotional disturbance, AND
> (2) the person poses an immediate substantial likelihood of serious harm, under
> § 33-6-501, because of the mental illness or serious emotional disturbance, AND
> (3) the person needs care, training, or treatment because of the mental illness or
> serious emotional disturbance, AND
> (4) all available less drastic alternatives to placement in a hospital or treatment
> resource are unsuitable to meet the needs of the person,
> THEN
> (5) the person may be admitted and detained by a hospital or treatment resource
> for emergency diagnosis, evaluation, and treatment under this part.

On July 26, 2012, an x-ray revealed that Mr. Johnson suffered a fractured right hip. He was transferred to Baptist Hospital for further evaluation, where additional x-rays showed that he also suffered a right femoral neck fracture. He underwent surgery to repair the hip on July 28, 2012, and remained hospitalized until August 7, 2012. At that time, he was transferred to Signature Healthcare for rehabilitation but was unable to participate due to his mental state. Still, he remained a patient at Signature Healthcare until September 2012 so that he could be treated for a bedsore that had developed following his hip surgery. At some point in September 2012, Mr. Johnson was discharged from Signature Healthcare and returned home.

After Mr. Johnson's return home, his wife Ceola Johnson ("Appellant") petitioned the Shelby County Probate Court requesting to be appointed as conservator of Mr. Johnson's person and property. The probate court conducted a hearing on October 29, 2012. On November 1, 2012, the court granted Appellant's petition in a written order. The court's order provides the following findings:

> [Mr. Johnson]'s medical condition is such that he is unable to care for himself and cannot make his own decision and needs to have a Conservator appointed to make all necessary decisions for him, including management of funds and other related personal matters. Therefore, the Court finds that [he] is a disabled person.

The court also found that the following rights of Mr. Johnson were removed from him and transferred to his conservator:

> the right to dispose of property, execute instruments, make purchases, enter into contractual relationships, give or refuse consent to medical and mental examinations and treatment and/or hospitalization, [and] pursue legal causes of action on behalf of Mr. Johnson.

Mr. Johnson subsequently died on November 13, 2012.

On October 15, 2013, Appellant via counsel mailed her pre-suit notice of a potential health care liability action against Lakeside. Several months later, on February 7, 2014, Appellant filed her complaint and certificate of good faith in the Shelby County Circuit Court.

Lakeside filed an answer to the complaint on March 5, 2014. Relevant to this appeal, Lakeside alleged that Appellant's complaint was filed past the expiration of the applicable one-year statute of limitations. Additionally on September 25, 2014, Lakeside filed a motion to dismiss based upon the expiration of the statute of limitations. Lakeside

3

specifically asserted that Appellant failed to timely give pre-suit notice within one year of Mr. Johnson's injury and failed to plead any facts that would otherwise create an exception to the statute of limitations.

Appellant responded to Lakeside's motion to dismiss on October 14, 2014. In support of her response, Appellant attached an undated Admission Summary whereby Judge Moore of the Shelby County General Sessions Court documented her approval of Mr. Johnson's admission to Lakeside. Appellant asserted that the Admission Summary demonstrated that Mr. Johnson had been "adjudicated incompetent," which would be sufficient to toll the statute of limitations pursuant to Tennessee Code Annotated Section 28-1-106, discussed *supra*.

On November 4, 2014, Appellant filed a motion to amend her complaint to include allegations that Mr. Johnson had been "adjudicated incompetent" prior to his injury in order to invoke the tolling provision of Section 28-1-106.

The trial court conducted a hearing on Lakeside's motion to dismiss on November 14, 2014, and granted the motion in favor of Lakeside. However, because the motion required review of matters outside the pleadings, the trial court noted that it had been converted to a motion for summary judgment, which the parties do not dispute. *See Moore v. State*, 436 S.W.3d 775, 783 (Tenn. Ct. App. 2014) ("When a trial court considers matters outside of the pleadings, . . . a motion to dismiss is converted to a motion for summary judgment."). The trial court entered a written order on November 24, 2014, finding that Appellant's pre-suit notice was filed approximately eighteen months after the cause of action accrued (i.e. Mr. Johnson's fall),[5] which was therefore barred by the statute of limitations. Further, the court found that the Admission Summary was not an adjudication of competency sufficient to toll the statute of limitations because the general sessions court merely "reviewed the Certificates of Need submitted by qualified medical professionals and authorized the patient's admission pending a formal hearing, which never occurred in this case." Without citation, the trial court additionally noted that the general sessions court was without authority to adjudicate issues of competency and that such authority was vested with the probate court. Accordingly, the trial court found no genuine disputes of material facts and dismissed Appellant's complaint in its entirety for failure to comply with the statute of limitations. The trial court entered an order on November 24, 2014, denying Appellant's request to amend her complaint as futile. On the same day, the trial court entered a written order memorializing its decision to grant summary judgment in favor of Lakeside.

On December 22, 2014, Appellant filed a motion to alter or amend the court's decision to grant summary judgment in favor of Lakeside. Appellant argued that the trial court erred when it found that the general sessions court did not have jurisdiction to

---

[5] Appellant does not argue that the cause of action accrued on any day other than July 21, 2012, the date of Mr. Johnson's fall.

adjudicate incompetency. Further, Appellant asserted that the Admission Summary and July 23, 2012 Order signed by Judge Moore constituted an adjudication of incompetency sufficient to toll the statute of limitations pursuant to Section 28-1-106. Notably, a copy of the July 23, 2012 Order was not introduced until this point in the litigation.

The parties appeared before the trial court on February 6, 2015; however, the trial court requested additional research and briefing on the 2011 amendment to Section 28-1-106. The trial court pointed out that no Tennessee case had yet interpreted the phrase "adjudicated incompetent" as used in Section 28-1-106. Pursuant to the trial court's directions, on March 9, 2015, Appellant filed a memorandum detailing the legislative history of the statute. On May 1, 2015, the trial court conducted another hearing on the motion to alter or amend. The trial court subsequently denied the motion by written order entered May 15, 2015, concluding that none of the requirements to grant a motion to alter or amend, discussed *infra*, were present in the case. Appellant filed a timely appeal.

### Issues

As we perceive it, Appellant raises two issues for our review as summarized from her appellate brief:

> 1. Whether the trial court erred in dismissing her complaint for failure to comply with the statute of limitations when it decided that the decedent had not been "adjudicated incompetent" as provided in Tennessee Code Annotated Section 28-1-106.

> 2. Whether the trial court erred when it denied Appellant's motion to alter or amend its dismissal of her complaint.

Additionally, Appellee raises one issue:

> 3. Whether Appellant is barred from relying upon Tennessee Code Annotated Section 28-1-106 where she allegedly failed to specifically plead the exception to the statute of limitations in her complaint.

### Standard of Review

This case presents an issue of statutory construction, which is a question of law, and questions of law are amenable to disposition by summary judgment. ***Metro. Dev. & Housing Agency v. Trinity Marine Nashville, Inc.***, 40 S.W.3d 73, 76 (Tenn. Ct. App. 2000). Questions of law are reviewed de novo, affording no presumption of correctness to the trial court's determination. ***Maggart v. Almany Realtors, Inc.***, 259 S.W.3d 700, 703 (Tenn. 2008).

However, a trial court's ruling on a motion to alter or amend will be reviewed only for an abuse of discretion. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that causes an injustice to the party complaining. ***Johnson v. Richardson***, 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). Applying this standard, we will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. ***Eldridge***, 42 S.W.3d at 85.

## Analysis

### A. Statute of Limitations

The statute of limitations for health care liability actions is one year from the date the action accrued. Tenn. Code Ann. § 29-26-116. A plaintiff in a health care liability action is also required to provide pre-suit notice of his intent to sue. ***Id.*** § 29-26-121. When a plaintiff provides pre-suit notice, the applicable statute of limitations is extended by 120 days. ***Id.*** Here, there is no dispute that Appellant's cause of action was not filed within one year and 120 days of the Mr. Johnson's fall, the date of the accrual of the cause of action. Appellant contends, however, that the statute of limitations was tolled because Mr. Johnson was "adjudicated incompetent" at the time the cause of action accrued. Conversely, Lakeside disputes that the requirements of Tennessee Code Annotated 28-1-106 were satisfied sufficient to toll the cause of action because Mr. Johnson had not been "adjudicated incompetent" within the meaning of the statute.

The issue before this Court is one of statutory construction. In interpreting a statute, our analysis is guided by the rules of statutory construction. As explained by the Tennessee Supreme Court in ***Mills v. Fulmarque***, 360 S.W.3d 362 (Tenn. 2012):

> Our role is to determine legislative intent and to effectuate legislative purpose. [***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 526 (Tenn. 2010)]; ***In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See **Lee Med., Inc.***, 312 S.W.3d at 526; ***Hayes v. Gibson Cnty.***, 288 S.W.3d 334, 337 (Tenn. 2009); ***Waldschmidt v. Reassure Am. Life Ins. Co.***, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See **Lee Med., Inc.***, 312 S.W.3d at 527; ***Green v. Green***, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the

statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills*, 360 S.W.3d 368. Therefore, courts must first determine whether the language of the statute is ambiguous. Only if the plain language of the statute presents an ambiguity or a conflict may the court consider material other than the statutory text. "When a statute is clear, we apply the plain meaning without complicating the task." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). "Our obligation is simply to enforce the written language." *Davis*, 308 S.W.3d at 837 (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)).

Accordingly, we turn to the language in the statute at issue, Tennessee Code Annotated Section 28-1-106:

> If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, or **adjudicated incompetent**, such person, or such person's representatives and privies, as the case may be, may commence the action, **after legal rights are restored**, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years **from restoration of legal rights**.

(Emphasis added.) Here, the parties' dispute concerns the term "adjudicated incompetent." Appellant contends that the statute of limitations was tolled pursuant to the foregoing statute because the decedent met the criteria for "adjudicated incompetent" at the time of his injury because he met the criteria of "unsound mind," the term used in the statute prior to a 2011 amendment. *See* 2011 Tenn. Pub. Acts 47, § 17 (amending Section 28-1-106).

Prior to the 2011 amendment, Tennessee Code Annotated Section 28-1-106 provided:

> If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or **of unsound mind**, such person, or such person's representatives and privies, as the case may be, may commence the action, **after the removal of such disability**, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

7

Tenn. Code Ann. § 28-1-106 (2010) (emphasis added). In interpreting this statute, the Tennessee Supreme Court held that to be considered of "unsound mind" the individual at issue "was unable to manage his or her day-to-day affairs at the time the cause of action accrued." ***Sherrill v. Souder***, 325 S.W.3d 584, 601 (Tenn. 2010). Under that version of the statute at issue, there was no requirement of judicial intervention prior to the accrual of the action for the tolling statute to apply. In 2011, however, the Tennessee General Assembly amended Tennessee Code Annotated Section 28-1-106 to replace the term "of unsound mind" with the term "adjudicated incompetent." Here, the crux of this appeal concerns whether the amendment changed the substantive analysis for determining whether the tolling statute applies to a particular individual. Appellant contends that the ***Sherrill*** Court's test for "unsound mind" in the pre-amendment version of Section 28-1-106 is the same analysis that this Court should apply to the statute's post-amendment use of "adjudicated incompetent." On the contrary, Appellee contends that amended version of Section 28-1-106, including the phrase "adjudicated incompetent," clearly provides that the decedent's alleged incompetency must have been judicially ruled upon. As required by the rules of statutory discussion discussed *supra*, we begin with the plain language of the current version of the statute.

The term "adjudicated incompetent" is not defined in Title 28. In addition, because of its relatively recent enactment, no Tennessee case has addressed the meaning of "adjudicated incompetent" as used in Section 28-1-106. However, the United States Court of Appeals for the Sixth Circuit has addressed this issue, relying on its understanding of Tennessee law. In ***Cobb v. Tennessee Valley Authority***, 595 F. App'x 458 (6th Cir. 2014), the Sixth Circuit considered whether "[Section] 28-1-106 required a judicial declaration" of incompetency to toll the statute of limitations. 595 F. App'x at 459. The court began by analyzing the plain language of the statute to ascertain its meaning. In doing so, the court relied upon a single definition of "adjudicate" found in *Black's Law Dictionary* defining the word as to "rule upon judicially," ***id.***, and concluded that, based on this definition, "[i]t is apparent that the Tennessee legislature meant to require a judicial determination." The court also noted that the 2011 amendments added the additional requirement of the "restoration of legal rights" after a plaintiff has been "adjudicated incompetent," before the statute begins to run. Accordingly, the Sixth Circuit affirmed the dismissal of the plaintiffs' lawsuit based on the absence of a judicial declaration of incompetency. ***Id.*** at 459–60. Although the decision in ***Cobb*** is instructive in this case, it is not binding on this Court. *See* ***Elias v. A & C Distributing Company, Inc.***, 588 S.W.2d 768, 771 (Tenn. Ct. App. 1979) ("While the decisions of [f]ederal . . . [c]ourts are not binding authority upon this Court and other State Courts in Tennessee, yet from time to time we find the reasoning in the decisions of a Federal District Court to be useful and persuasive."). Accordingly, we turn to consider whether we, like the ***Cobb*** Court, interpret the current version Tennessee Code Annotated Section 28-1-106 as requiring a judicial determination of incompetence.

Where words or phrases are not defined in the statutory text, courts may utilize dictionary definitions in interpreting statutes. ***State v. Majors***, 318 S.W.3d 850, 859

(Tenn. 2010) (quoting *State v. Williams*, 690 S.W.2d 517, 529 (Tenn. 1985)). In this case, the word "adjudicated" is vehemently contested by the parties. Indeed, as discussed above, both parties champion slightly contradicting definitions of the word. Across several dictionaries, we have discovered slightly differing definitions for the term "adjudicated." First, in *Black's Law Dictionary*, the word "adjudicate" is primarily defined as "to rule upon judicially." *Black's Law Dictionary* 47 (9th ed. 2009). However, *Black's* also cross-references the definition for the word "adjudge" as a second definition to "adjudicate." *See Black's Law Dictionary* at 47. *Black's* defines "adjudge" similarly to adjudicate, as "to rule upon judicially," but also offers a more expansive definition, "to deem or pronounce to be." In a non-legal dictionary, *Webster's New World College Dictionary*, the word "adjudicate" means "to hear or decide a case" or "to serve as a judge." *Webster's New World College Dictionary* 18 (5th ed. 2014). Notably, *Garner's Dictionary of Legal Usage* also contemplates the use of "adjudicated" as a modifier, as it is used in Section 28-1-106. It provides that "the adjectival usage [of "adjudicated"] purports to give the statement more authority . . . ." *Garner's Dictionary of Legal Usage* 26 (3rd ed. 2011). Based on the foregoing definitions, it is unclear whether the word "adjudicated" necessitates a decision by a judge. Appellant asserts that the multiple dictionary definitions of the term "adjudicated" render the statute ambiguous and allow this Court to consider the legislative history behind the passage of the 2011 amendment. Respectfully, we disagree.

According to the Tennessee Supreme Court, courts may apply the maxim of *noscitur a sociis* as an aid in its interpretation of legislative intent. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005). Under the doctrine of *noscitur a sociis*, "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Black's Law Dictionary* at 1160–61; *see also id.* Thus, the phrase "adjudicated incompetent" must be construed in accordance with "the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Strode*, 232 S.W.3d 1, 9 (Tenn. 2007) (citing *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000))) (internal quotation marks omitted). Indeed, the Tennessee Supreme Court has held that "it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (*First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 207 S.W.2d 1007, 1009–10 (Tenn. 1948).

Utilizing this maxim, our review of the statute at issue demonstrates that the meaning of the phrase "adjudicated incompetent" is clarified by the surrounding language in the statute. Specifically, the statute provides that the plaintiff may commence the action "after legal rights are restored" within the applicable statute of limitations unless that time exceeds three years and, in that case, within three years "from restoration of legal rights." Tenn. Code Ann. § 28-1-106. Pursuant to *nosicur a sociis*, the term "adjudicated incompetent" must be read in conjunction with the other parts of the statute

9

that clearly contemplate a loss and restoration of "legal rights." Undoubtedly, it is the courts, rather than physicians, who can adjudicate an individual's legal rights. Furthermore, our holding is supported by this Court's Opinion in *Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn. Ct. App. 1982), which previously used the term "adjudication of incompetency" to refer to an order appointing a conservatorship, implying that this term denotes judicial action. Based on the foregoing, we conclude that the statutory language clearly contemplates that judicial intervention is necessary in order for an individual to be "adjudicated incompetent."

Additionally, Tennessee law is clear that "[n]o person can claim use of a disability unless it existed when the right of action accrued. . . ." Tenn. Code Ann. § 28-1-108. This Court has interpreted the language of Section 28-1-106 to require that the adjudication of incompetency take place at some point on or before "the cause of action accrued" in order for the tolling provision to apply. In *McMillan v. Tennessee Board of Probation & Parole*, No. M2001-01843-COA-R3-CV, 2002 WL 31109735 (Tenn. Ct. App. Sept. 24, 2002), *perm. app. denied* (Tenn. Dec. 16, 2002), this Court interpreted the statute accordingly:

> The general rule, which is subject to some exceptions, is that when a right of action has accrued, and there are parties competent to sue and be sued, limitations begin to run and will continue to do so notwithstanding any subsequent disability; the provisions suspending the operation of limitations, or extending the period, in favor of persons under disability are confined to disabilities existing at the time the cause of action accrues to such person.

*Id.* at 2. Reading Tennessee Code Annotated Section 28-1-108 in conjunction with the current version of Tennessee Code Annotated Section 28-1-106, a plaintiff's mental incompetency must have been judicially adjudicated at the time his cause of action accrued. *See id.*; *see also Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn. Ct. App. 1982) (holding that the general rule is that the statute of limitations is only tolled when the plaintiff's disability exists at the time the cause of action accrues).

In the case-at-bar, Mr. Johnson's cause of action accrued on July 21, 2012, the date of his fall at Lakeside. As of this date, he had not been "adjudicated incompetent" because no orders of the court had been entered on this issue. *See Steppach v. Thomas*, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011) (noting that a court speaks through its orders). Instead, the only documents that had been created concerning Mr. Johnson's mental state consisted of the first Certificate of Need executed by Judd Carey, LCSW and the second Certificate of Need executed by Dr. Amos Raymond. Clearly, neither Certificate of Need is a **judicial** adjudication of incompetency. We also must conclude that the Admission Summary signed by Judge Moore of the general sessions court is insufficient to demonstrate that Mr. Johnson's incompetency had been adjudicated on or

before July 21, 2012. The Admission Summary is undated, but we note that it could not have been signed any earlier than July 21, 2012 because it references Dr. Raymond's Certificate of Need signed on that date.[6] A plaintiff seeking an exception to the statute of limitations carries the burden of demonstrating its applicability. *See McMillan*, 2002 WL 3110973, at *3 ("[Plaintiff] bears the burden of proving he was of unsound mind during the entire time necessary to toll the statute."). Here, even assuming *arguendo* that the Admission Summary constitutes an adjudication of Mr. Johnson's incompetency, there is no indication that it was entered as of the date of Mr. Johnson's fall, and Appellant has not met her burden to demonstrate that it was. *See id.* Last, the probate court's order appointing Appellant as conservator over Mr. Johnson's person and property was not entered until November 1, 2012, also clearly after the cause of action accrued. *See* Tenn. Code Ann. § 28-1-108; *McMillan*, No. M2001-01843-COA-R3-CV. 2002 WL 31109735, at *2. Our review of the record reveals that, at the time Mr. Johnson fell, he had not been "adjudicated incompetent" within the meaning of Tennessee Code Annotated Section 28-1-106. Accordingly, the one-year statute of limitations was not tolled, and Appellant was required to institute the proceedings within one year after Mr. Johnson fell at Lakeside.

## B. Motion to Alter or Amend

Finally, Appellant argues that the trial court erred in denying her request for relief in her motion to alter or amend. "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* From our review of the record, none of the foregoing requirements for a motion to alter or amend have been fulfilled.

Here, Appellant argues that the trial court erred in not granting her motion to alter or amend on the basis of newly discovered evidence, specifically the July 23, 2012 order of the general sessions court involuntarily admitting Mr. Johnson. Appellant contends that the July 23, 2012 order of the general sessions court "had not previously been available. Such orders are specially kept in confidential files and are not available to the public. After learning of this and presenting a signed Authorization by [Appellant], counsel for [Appellant] was able to obtain the Order." Despite Appellant's argument, we cannot conclude that the July 23, 2012 order was unavailable prior to the entry of the trial court's judgment. This Court in *Kirk v. Kirk*, 447 S.W.3d 861 (Tenn. Ct. App. 2013), held that:

---

[6] Despite this fact, Appellant's motion to alter or amend incorrectly contends that the Admission Summary was "signed by the General Session[s] Judge on July 20, 2012."

> In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, "it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence."

*Id.* at 869 (quoting ***Seay v. City of Knoxville***, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983) (citations omitted)); *see also* ***Selitsch v. Selitsch***, No. M2014-00905-COA-R3-CV, 2015 WL 6730955, at *1 (Tenn. Ct. App. Oct. 14, 2015) (concluding that because the "information was, or should have been, available to counsel prior to the hearing on the motion and cannot truly be considered 'newly discovered'"). Although counsel for Appellant indicated that she endured some difficulty in procuring the general sessions court's order, the order was eventually procured through Appellant's authorization. Nothing in the record or in Appellant's brief suggests that this avenue for obtaining the order was not available to Appellant prior to the entry of the trial court's order dismissing her cause of action. Accordingly, it was not error for the trial court to deny Appellant's request to alter or amend the dismissal of her lawsuit.

Because we have affirmed the trial court's decision to dismiss the complaint for Appellant's failure to comply with the statute of limitations, Appellee's issue of whether Appellant was required to specifically plead an exception to the statute of limitations is hereby pretermitted.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed. This cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Ceola Johnson, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE