# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 1, 2024 Session

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. JACQUELINE HALL JOHNSON

**Appeal from the Circuit Court for Sumner County**
**No. 83CCI-2023-CV-57    Joe Thompson, Judge**

_____

**No. M2024-00375-COA-R3-CV**

_____

Before taking his own life, the Defendant's husband shot and killed another individual, resulting in a civil suit brought by the victim's family. An insurance company with whom the husband had a policy brought a declaratory judgment action seeking a declaration that the Defendant's husband's actions were not covered by the insurance he had obtained. A sheriff's deputy tried to serve process. The Defendant, however, was not home, and the deputy left a contact card. The Defendant called the deputy, and, after discussion, she instructed the deputy to leave the documents with a particular individual at her home. The deputy followed these instructions. The Defendant did not respond to the suit and a default was entered. Months later, the Defendant, alleging the deputy failed to effectuate valid service of process, sought to have the default set aside. The trial court disagreed and declined to set aside the default. The Defendant then asked the trial court to alter its order, asserting for the first time that she was not a proper party to the Company's suit. The trial court declined. The Defendant appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Michael Fisher and Rocky McElhaney, Hendersonville, Tennessee, for the appellant, Jacqueline Hall Johnson.

Steven A. Dix, Murfreesboro, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

# OPINION

## I.

This appeal concerns the aftermath of a shooting that took place in Sumner County, Tennessee. Kevin Johnson, Appellant Jacqueline Johnson's husband, reportedly experienced a "mental breakdown" on the morning of August 7, 2021. Mr. Johnson went on a rampage with a firearm, shooting multiple individuals including Ms. Johnson. Mr. Johnson killed a man named Christopher Linder before taking his own life.

The Linder family sued, bringing a tort action for wrongful death and negligent infliction of emotional distress against Mr. Johnson's estate. The Chancery Court Probate Division for Sumner County appointed Ms. Johnson "Administrator Ad Litem for the sole purpose of receiving service of process as the named party in interest of the tort action that will be filed in Sumner County Circuit Court arising out of the incidents that occurred on August 7, 2021."

Ms. Johnson settled with the Linder family. She agreed to sell the Johnsons' marital residence, use the proceeds to settle the mortgage, and then split any remaining proceeds with the Linders. Ms. Johnson contemporaneously executed an affidavit averring that Mr. Johnson died intestate, that she assumed all of Mr. Johnson's interest in their marital residence after his death, and that "there was not a valid policy of insurance" covering the Johnsons' residence.

Ms. Johnson's final averment was inaccurate. The couple's marital residence had been insured by Mr. Johnson through Tennessee Farmers Mutual Insurance Company (Farmers Mutual). The plan that Mr. Johnson purchased remained effective despite his death.

In addition to coverage of the home, the Johnsons' insurance plan also includes personal liability coverage. Section II of the policy states that Farmers Mutual "will pay compensatory damages up to our limit of liability for this coverage for bodily injury and property damage for which an insured becomes legally liable to pay because of any one occurrence." The term "occurrence" is defined to include "an[y] accident during the policy period . . . that is neither expected nor intended by an insured and that results in bodily injury, medical covered injury, or property damage." An exception exists in the plan for any "[b]odily injury, economic loss, or property damage caused by or resulting from any action, other than accidental, committed by or at the direction of any person."

Relying primarily on this exception under the insurance policy,[1] Farmers Mutual

---

[1] Farmers Mutual also asserted that Ms. Johnson materially breached a different section of the policy by failing to inform the company of the shootings "as soon as possible."

filed a declaratory judgment action in the Sumner County Circuit Court. The company sought a declaration that the damages caused by Mr. Johnson's actions on August 7, 2021, were not covered by the Johnsons' policy because Mr. Johnson's actions "were not accidental. Rather, the actions that are alleged are intentional . . . [and] fall beyond the liability coverage of the applicable policy." Farmers Mutual declaratory judgment action named "Jacqueline Hall Johnson as Administrator Ad Litem for and the Estate of Kevin Ray Johnson."

Deputy Rick Thompson of the Sumner County Sheriff's Department endeavored to serve process upon Ms. Johnson. Deputy Thompson visited Ms. Johnson's residential address on the morning of January 19, 2023, to deliver a copy of the company's suit, but Ms. Johnson did not answer the door. He left "a business card" at the house and, later that morning, "noticed that [he] had a message from Ms. Johnson" on his voicemail. Deputy Thompson testified that, when he returned her call, Ms. Johnson told him that he "had permission to leave a copy [of the suit] with James Johnson there at the residence." Based on this conversation, Deputy Thompson returned to Ms. Johnson's house and left the relevant documents at her home with an individual he understood to be James Johnson. When asked whether he received identification from this individual on cross-examination, Deputy Thompson testified that he did not but responded by stating that the individual "[e]ither . . . identified himself" as James Johnson "or [Ms. Johnson] made the statement that he would be there at the residence." The technical record includes a copy of the summons that Deputy Thompson signed on the morning of January 19th, and, in the section labeled "Officer's Return," Thompson wrote: "Served Jacqueline Hall Johnson by phone. Copy [with] James Johnson by request. 10:29 AM."

Ms. Johnson did not respond in court to the company's declaratory judgment action. Accordingly, Farmers Mutual sought a default judgment. The Circuit Court granted the company's motion and entered a default judgment against Ms. Johnson, declaring "[t]hat there is no insurance coverage . . . regarding the matters asserted in the Complaint, and further, no duty to indemnify nor duty to defend, or provide any other services related thereto." The Circuit Court's order includes a certificate of service indicating that a copy of the signed order was mailed to Ms. Johnson's residential address, which has been confirmed as her residential address and is the same address where Deputy Thompson indicated that he served process.

Nearly six months later, Ms. Johnson asked the Circuit Court to set aside the default judgment. She asserted that she had been previously unaware of the suit. In an accompanying declaration, Ms. Johnson averred that she "[did] not recall ever receiving a phone call from [Deputy Thompson] in January of this year, nor do I know anyone named James Johnson." According to Ms. Johnson, only her brother and her son live with her, and neither are named James. Ms. Johnson argued in her motion that Farmers Mutual failed to properly serve her with its suit, that such a failure creates a basis for a finding of excusable neglect, that she had a meritorious defense to the company's suit insofar as she

believed Mr. Johnson had suffered a mental break and did not consciously intend to harm anyone, and that Farmers Mutual would not be prejudiced by having to defend the lawsuit if reopened by the Circuit Court. In her motion to set aside, Ms. Johnson did not raise any challenge to the appropriateness of Farmers Mutual naming her as a party in the company's suit.

Farmers Mutual disputed Ms. Johnson's contentions, asserting that Ms. Johnson did have notice of the lawsuit. Farmers Mutual noted that the law firm representing Farmers Mutual had multiple conversations with Ms. Johnson. In accordance therewith, Farmers Mutual's counsel submitted an affidavit to the Circuit Court explaining that Ms. Johnson called his office on January 19th—the date Deputy Thompson indicated he had served process—and on several later occasions. In conversations, Farmers Mutual's counsel maintains that Ms. Johnson indicated that she did not oppose the company's declaratory judgment suit. Counsel provided copies of letters he wrote and sent to Ms. Johnson's confirmed residential address. In a letter dated January 25, 2023, counsel wrote: "I understand that you have been served with the Complaint that we filed in the above styled matter. I am also aware that you have reached out to my office. I had my assistant attempt to return your call." In a letter dated February 14, 2023, counsel wrote: "Thank you for speaking with my assistant, Denise Dawson. Pursuant to your conversation, enclosed please find my proposed Agreed Judgment Order concluding and resolving our Complaint for Declaratory Judgment." Counsel did note that Ms. Johnson never sent replies to these letters, and she never signed the proposed agreed order.

In challenging Ms. Johnson's contentions, Farmers Mutuals also noted Deputy Thompson's return from the service of process and his recollection as to his actions in serving process in this case. Farmers Mutual argued that the trial court was entitled to rely upon Deputy Thompson's return as presumptive evidence of proper service, that Ms. Johnson's appointment of James Johnson to receive service of process complied with the Tennessee Rules of Civil Procedure, and that, consequently, her failure to respond to the company's suit constituted willfulness.[2] The company also asserted that Mr. Johnson's actions on August 7, 2021, were intentional and argued that this obviated any meritorious defense Ms. Johnson may have had to its declaratory judgment action. Finally, the company communicated that it would be prejudiced by setting aside the default and "being required to move forward with prosecuting a matter that was initially agreed to by [Ms. Johnson], then ignored by [Ms. Johnson] with no meritorious defense."

The trial court held two hearings. While no transcript exists for the first hearing, both parties agree that the trial court decided as a result of the hearing to request live testimony concerning service of process. Ms. Johnson and Deputy Thompson testified at

---

[2] Farmers Mutual also briefly suggested in the trial court that Ms. Johnson effectively waived the requirement for service. The trial court did not rule upon this argument, and neither party addresses the merits of a waiver argument in their arguments before this court.

a second hearing, offering their respective recollections related to the service of process. Farmers Mutual's counsel also submitted an affidavit and documents concerning Ms. Johnson's interactions with his office to the trial court during this hearing.

The trial court asked each side to submit proposed findings of fact and conclusions of law. After the parties completed their presentation of evidence at the second hearing and received this instruction, Ms. Johnson's counsel made the following observation:

> One thing that I noticed going through these pleadings – so first off, Ms. Johnson was not on the policy of insurance. It was Mr. Johnson's policy. He owned the house outright. Ms. Johnson's coowner. He killed himself on the day that this occurred. So subsequently, Ms. Johnson was appointed as Administrator Ad Litem by my office, solely for receiving the service of process in the tort action.
>
> So I'm not aware if the plaintiff's counsel here had her appointed to receive service in this case. I didn't see that in the pleadings, but they could have filed it in Chancery Court. So I just ask, if that's their proof, to provide that she was authorized to accept service – or she was a proper party to be served in this action on behalf of the deceased.

Counsel did not clearly present this observation as an argument or as an objection during this hearing, nor did counsel cite any authority suggesting that Ms. Johnson could not be named in Farmers Mutual's declaratory judgment action. In response to the comment from Ms. Johnson's, the trial court orally directed this matter to be raised in the proposed order.

Following the trial court's instructions, each side submitted proposed findings of fact and conclusions of law. Ms. Johnson included among her proposed conclusions of law that "[t]he contents of a conversation [she had] with counsel's staff are inadmissible hearsay." She had mentioned a hearsay objection during the hearing but did not precisely identify which evidence constituted hearsay. Her proposed findings of fact and conclusions of law, however, did not reference at all the proper party question that she had raised.

The trial court denied Ms. Johnson's motion to set aside. The trial court based its ruling primarily on two credibility findings: (1) that the Deputy was "a credible witness" in testifying that he "drove back to the residence and delivered the papers at 10:29 a.m. to an individual who identified himself as James Johnson," and (2) that Ms. Johnson was not credible due in part to the proof related to her interactions with Farmers Mutual's counsel's law firm and the emotional trauma that she has endured, which, she admitted at the hearing, impacted her ability to recall the events of January 19, 2023. The trial court found that Farmers Mutual "properly served" Ms. Johnson and concluded that Ms. Johnson's failure to respond after being served was willful. The trial court also concluded that Ms. Johnson failed to mount a meritorious defense to the Farmers Mutual lawsuit and that Farmers

Mutual "would unquestionably be prejudiced if the relief sought was granted."

In response to the issuance of the court's order, Ms. Johnson filed a Motion to Alter or Amend. For the first time, Ms. Johnson argued that she was not an appropriate party to be named by Farmers Mutual. She based this argument upon only having been appointed Administrator Ad Litem of Mr. Johnson's estate "for the sole purpose" of receiving service in the Linder lawsuit. Ms. Johnson also sought clarifications from the trial court regarding the admissibility of Farmers Mutual's counsel's affidavit and his statements regarding her interactions with his law firm, the meritorious defense element, and the prejudice element of the default judgment analysis. The trial court denied Ms. Johnson's motion and provided no further clarifications.

Ms. Johnson appealed. She raises three issues on appeal: (1) whether she was properly served; (2) whether the trial court erred in denying her motion to set aside based upon excusable neglect; and (3) whether she was even a proper party to the Farmers Mutual declaratory judgment action. Ms. Johnson did not raise the admissibility of the law firm documents or the affidavit of Farmers Mutual's counsel as an issue on appeal, nor has she presented any argument in her brief that those documents were errantly considered by the trial court. Accordingly, we limit our review to the three issues properly submitted on appeal.

## II.

The central fulcrum on which this appeal turns is whether Ms. Johnson was properly served. She insists that she was not. Farmers Mutual insists that she was. The circuit court concluded that Farmers Mutual is correct that she was properly served, and Ms. Johnson challenges that determination on appeal.

The trial court's findings on this matter are of critical importance to assessing Ms. Johnson's argument on appeal. The trial court found as follows:

> Deputy Rick Thompson is employed by the Sumner County Sheriff's Department and serves process. On January 19, 2023, he travelled to the residence of Defendant and, finding no [one] at home, left a business card at the residence. The Defendant subsequently called Deputy Thompson and instructed him to leave the summons and suit papers with a "James Johnson" at the residence. Pursuant to those instructions, Deputy Thompson drove back to the residence and delivered the papers at 10:29 a.m. to an individual who identified himself as James Johnson. The Court finds the Deputy to be a credible witness.

> The Defendant called Plaintiff's counsel's office at 1:04 p.m. the same day. Based upon this phone call, Counsel prepared paperwork consistent

with the representations made by the Defendant to the staff at counsel's office.  Defendant had, by this time, executed an affidavit in another matter confirming the lack of insurance coverage for the loss.

Defendant testified that she has no recollection of the events of January 19, 2023, due to emotional trauma.  She further testified she had no recollection of calling counsel's office, nor speaking with his staff, nor any other matter related to the service of process in this case.  Based on her own testimony, the Court does not find the Defendant to be a credible witness.  The Court thus concludes that the Defendant was properly served with process by Deputy Thompson.

Under Tennessee Rule of Civil Procedure 4.04(1), service could be perfected upon Ms. Johnson

by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

The record on appeal confirms, and neither party disputes, that Farmers Mutual did not serve Ms. Johnson in accordance with the first two methods identified in Rule 4.04(1).  The method at issue in the present case is instead "delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served."  *See* Tenn. R. Civ. P. 4.04(1).  To properly serve an individual via this route, the individual "must have been appointed an agent to accept service on behalf of" the individual.  *Roberts on Behalf of Edwards v. Hinkle*, No. W2022-01714-COA-R3-CV, 2024 WL 1526541, at *4 (Tenn. Ct. App. Apr. 9, 2024).

Regarding such service, the Tennessee Supreme Court has indicated that

A principal may expressly give actual authority to the agent in direct terms, either orally or in writing.  Implied authority, by contrast, "embraces all powers which are necessary to carry into effect the granted power, in order to make effectual the purposes of the agency."  Implied authority that the principal has actually conferred on the agent can be circumstantially established through conduct or a course of dealing between the principal and agent. Implied authority must be predicated "'on some act or acquiescence of the principal,'" rather than the actions of the agent.  In the context of serving process, the record must contain "evidence that the defendant

- 7 -

intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant." Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process. Nor is the mere fact of acceptance of process sufficient to establish agency by appointment.

*Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010) (citations omitted).

In arguing the trial court erred by finding service via an authorized agent, Ms. Johnson asserts the following in her brief on appeal:

> Appellant testified that she did not authorize anyone named James Johnson to accept service on her behalf. There is no proof in the record that Appellant knew anyone by the name James Johnson. There is proof in the form of Appellant's own testimony that she does not know a "James Johnson" and that she never authorized this fictitious person to accept service on her behalf. It is impossible for Appellant to authorize James Johnson as an agent as James Johnson is not a person Appellant knows to exist. Therefore, Appellant was not served via this third method.

In addition, Ms. Johnson argues that this case closely mirrors *Watson v. Garza*, 316 S.W. 3d 589 (Tenn. Ct. App. 2008), in which this court found that the service of process was not properly effectuated.

In considering Ms. Johnson's argument, we review a trial court's findings of fact de novo with an accompanying presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). "When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). In conducting this deferential review, "a trial court's determination of credibility will not be overturned on appeal unless there is clear and convincing evidence to the contrary." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). Alternatively, the trial court's conclusions as to questions of law are reviewed de novo and receive no presumption of correctness. *Emory v. Memphis City Schs. Bd. of Educ.*, 514 S.W.3d 129, 142 (Tenn. 2017).

As to the facts of what actually happened regarding the service of process in the present case, the trial court's conclusions turn upon its evaluation of credibility of live witnesses. The circuit court found Deputy Thompson to be credible and found Ms. Johnson not to be credible. The record does not present clear and convincing evidence to the contrary. Ms. Johnson's denials ran contrary to the "Officer's return" from January 2023,

Deputy Thompson's recollection of the events, and the evidence presented by Farmers Mutual's counsel related to Ms. Johnson's communication with his office. Simply stated, the evidence in the record in the present case is insufficient to overcome the trial court's credibility determinations in this case.

Ms. Johnson's contention that this court's decision in *Watson v. Garza*, 316 S.W.3d 589 (Tenn. Ct. App. 2008) requires reversal of the trial court's decision is similarly unavailing. The circumstances of *Watson* diverge significantly in multiple critical respects from the present case. In *Watson*, an accident occurred involving Ronald Watson and Roberto Garza, Jr. *Id*. at 591. Jimmy Harber owned the semi-tractor truck being driven by Mr. Garza, and the vehicle was leased to Allon Delivery, LLC. *Id*. Mr. Watson brought suit against Messrs. Garza and Harber and also Allon Delivery. *Id*. The return for summons issued for Mr. Garza was completed by a deputy sheriff in the following manner:

> I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN THE WITHIN [sic] SUMMONS:
>
> By delivering on the 21st day of December, 2005, at 18:50 P.M. a copy of the summons and a copy of the Complaint to the following defendants:
>
> Jimmy Harber owner of Allon Delivery, owner requested paper to be served upon Jimmy Harber

*Id*. at 591-92. Mr. Garza by affidavit indicated "that he had 'never given authorization to Mr. Harber to accept process on my behalf,' and that Mr. Harber had never been his authorized agent for any purpose." *Id*. at 592. Neither Messrs. Watson or Harber nor the deputy, who served process, provided any evidence to the contrary. *Id*. at 592, 596. In other words, in *Watson*, the return provided no support for the conclusion that Mr. Harber had been authorized to serve as an agent by Mr. Garza for purposes of accepting service of process. To the contrary, the return reflected that process was left with Mr. Garza at the request of Mr. Harber not Mr. Garza. Additionally, there was no testimony from any witness that Mr. Garza had authorized Mr. Harber to receive service of process for him.

This case stands in diametric opposition to the circumstances of *Watson*. Deputy Thompson recalled the circumstances of the service of process in this case. He testified regarding his conversation with Ms. Johnson and her direction that he should leave the documents with James Johnson who would be at her residence. Deputy Thompson testified that he acted consistent with Ms. Johnson's request. The return is consistent with Deputy Thompson's recollection of this conversation. The evidence provided by Farmers Mutual's counsel regarding subsequent communication with Ms. Johnson is also consistent with this testimony. Simply stated, in *Watson*, there was no evidence that Mr. Garza had authorized Mr. Harber to serve as his agent while in the present case there is significant evidence that Ms. Johnson directed Deputy Thompson to leave the documents at her residence with an

individual who she identified as James Johnson and that Deputy Thompson did precisely that. Accordingly, we find Ms. Johnson's contention that she was not properly served unavailing.

III.

Ms. Johnson also argues that the trial court erred in failing to vacate the default judgment based upon her excusable neglect in failing to respond to the suit. The Tennessee Supreme Court has indicated "that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge" and, accordingly that "[t]he standard of review on appeal is whether the trial court abused its discretion in granting or denying relief." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015). This court reviews a trial court's findings of fact de novo with an accompanying presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

Tennessee Rule of Civil Procedure 60.02 provides that

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02. "When a party seeks relief from a final judgment pursuant to Rule 60.02, the burden of proof rests with that party." *Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003).

In the context of default judgments, there are three factors for courts to consider in determining whether a default judgment should be vacated: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Henry*, 104 S.W.3d at 481. Regarding purported excusable neglect, the first factor functions as a gateway that must be opened for relief to be afforded under rule 60.02. The Tennessee Supreme Court has indicated that

> when a party seeks relief from a default judgment due to "excusable neglect," whether pursuant to Rule 54.02 (for interlocutory judgments), Rule 59.04 (for final judgments within thirty days of entry), or Rule 60.02 (for final judgments more than thirty days after entry), a reviewing court must first determine whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court need not consider the other factors.

*Discover Bank v. Morgan*, 363 S.W.3d 479, 493-94 (Tenn. 2012).

Addressing Ms. Johnson's Rule 60.02 motion, the trial court in the present case stated the following:

> In order to set aside a default judgment, the Court must determine whether the default was willful; whether the Defendant has a meritorious defense; and whether the non-defaulting party would be prejudiced if relief were granted. With respect to the first factor, our Court of Appeals has equated willfulness with being "personally at fault." *Henry v. Goins*, 104 S.W.3d 475, 481, 482 (Tenn. 2003). In this case, the Defendant knew she was being served with process, acted upon that knowledge by contacting defense counsel, yet chose to take no action. Under these circumstances, the Court finds that the Defendant's actions were willful. The Defendant has presented no evidence of a meritorious defense to the underlying Declaratory Judgment action and the Plaintiff would unquestionably be prejudiced if the relief sought was granted.

Ms. Johnson's argument that her default was not willful is based upon her contention that she was unaware of the declaratory judgment action until almost six months after the trial court granted the default judgment. The trial court's factual findings reflect that Ms. Johnson was aware of the suit, and, as noted above, the trial court did not err in

- 11 -

concluding that service of process was properly effectuated in this case. We conclude that the trial court did not err in finding that Ms. Johnson's default willful and, therefore, conclude that the trial court did not err in declining to grant relief based upon excusable neglect.

IV.

Ms. Johnson also argues that she is not even a proper party to Farmers Mutual's declaratory judgment action as the insurance policy was her husband's policy. Farmers Mutual disagrees. In support of her contention, Ms. Johnson asserts that she is not insured under the policy. Though the policy was not in her name, we note that Ms. Johnson appears to qualify as an insured under the policy. While the policy was procured by Mr. Johnson, in the definition section of the insurance policy, the term insured is defined as follows:

> **Insured** means:
>
> 1.  **You**; or
>
> 2.  a person who is a resident of **your** household and who is either:
>     a.   related to **you** by blood, marriage, or adoption;
>     b.   **your** ward; or
>     c.   **your** foster child.
>
> 3.  If you die, **your** estate's personal representative, but only with respect to the representative's legal responsibilities for the maintenance or use of property covered by this policy.

This term is contradistinguished in the policy from a "designee," as that term only encompasses "a person or entity who acts for **you** or on **your** behalf but is not an **insured**. **Designee** includes, but is not limited to, **your** conservator, guardian, attorney-in-fact, or public adjuster." Asked about the policy's language defining insured at oral argument, Ms. Johnson's counsel responded by indicating that the language of insurance policies varies, and when asked to assume the policy was as is reflected in the record, counsel stated that it would be necessary to know more facts as to the Johnsons' circumstances at the time to know whether she qualified as insured.[3]

---

[3]

Counsel for Ms. Johnson: She was not insured. She was not on the insurance policy that is subject to the DJA action.

Judge: Doesn't she fall within the definition of insured under the insurance though? Insured is defined as including a person who is a resident of your household who is either related to you by blood, marriage, or adoption; your ward; or your foster child. Wouldn't she fall within the definition of insured?

Furthermore, Ms. Johnson asserts that she could only be named a party in this declaratory judgment action if she were the administrator of Mr. Johnson's estate generally. She emphasizes that the Chancery Court's probate order named her an administrator for a more limited purpose. The Sumner County Chancery Court "ORDERED that Jaqueline Hall Johnson, shall be appointed Administrator Ad Litem for the sole purpose of receiving service of process as the named party in interest of the tort action that will be filed in Sumner County Circuit Court arising out of the incidents that occurred on August 7, 2021."

Ms. Johnson's argument is not properly before this court on appeal for at least two reasons. One, Ms. Johnson did not timely present this argument to the trial court. Two, Ms. Johnson has failed to offer any authority in support of her proposition that under the circumstances of the present case she would not qualify as a proper party to the declaratory judgment action.

Regarding the first reason, the first time that Ms. Johnson argued that declaratory judgment should be set aside on this basis was in the wake of the circuit court's order denying her Motion to Alter or Amend. While Ms. Johnson asserted that she advanced this argument earlier, the record does not appear to support this contention. This argument does not appear in her written arguments advanced for setting aside the default judgment. Ms. Johnson did orally raise a question after closing proof at the second hearing regarding this matter. The trial court noted this should be addressed in her proposed findings. Ms. Johnson, however, did not follow up upon with additional written filings prior to issuance of the circuit court's order setting forth or follow up by addressing this matter in her proposed findings of fact and conclusions of law. The first time this argument was presented was in her Rule 59 Motion to Alter or Amend.

This court has repeatedly noted that "[a] Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *See*, *e.g.*, *Kirk v. Kirk*, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). This court has also oft noted that "[t]ypically, when a party raises an argument for the first time in a motion to alter or amend, we will deem the argument waived[.]" *Robinson v. City of Clarksville*, 673 S.W.3d 556, 567 (Tenn. Ct. App. 2023) (quoting *City of Memphis v. Pritchard*, No. W2019-01557-COA-R3-CV,

---

Counsel for Ms. Johnson: I mean. I have seen that vary from policy to policy.

Judge: If that's in this policy, would she fall within the definition of insured?

Counsel for Ms. Johnson: I would have to have to know more facts as to their exact situation at the time to this to give a definitive answer. But from that language she was married to him at the time. She was not specifically listed anywhere on the policy.

2020 WL 4354911, at *3 (Tenn. Ct. App. July 29, 2020)); *see also*, *e.g.*, *Cent. Parking Sys. of Tennessee, Inc. v. Nashville Downtown Platinum, LLC*, No. M2010-01990-COA-R3CV, 2011 WL 1344633, at *5 (Tenn. Ct. App. Apr. 7, 2011) (citation omitted) ("Because [the party's] only basis for relief on appeal—an implied notice theory—was first raised in a Rule 59.04 motion, and an issue first raised in a motion to alter or amend is not properly raised before the trial court, we find the issue is waived on appeal."); *cf. Chadwell v. Knox Cnty.*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998) ("[W]e do not find any authority which authorizes a motion to alter or amend in order to allow a party to present her case under a new theory when the facts and law were available to be argued at the trial prior to the court's original decree.").

As for the second reason this issue is not properly before this court on appeal, Ms. Johnson fails in her appellate brief to offer any authority in support of the proposition that she is not a proper party to the declaratory judgment action. Ms. Johnson leaves the researching of this matter in support of her contention *entirely* to this court. Under such circumstances, an argument is waived. *Reguli v. Anderson*, No. M2022-00705-COA-R3-CV, 2024 WL 1708347, at *11 (Tenn. Ct. App. Apr. 22, 2024), *perm. app. denied* (Sept. 12, 2024) (noting the appellant "provides no authority to support her proposition . . . . She has implicitly left the researching and exploration of this legal question *entirely* to this court; we decline the invitation and instead conclude that this argument is waived."); *see also Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

Thus, Ms. Johnson failed to timely raise her contention before the trial court. Additionally, she has failed to adequately support her contention on appeal. Accordingly, upon these bases, we conclude that this issue is not properly before us.

VI.

For the aforementioned reasons, we affirm the judgment of the Circuit Court for Sumner County. Costs of this appeal are taxed to the appellant, Jacqueline Hall Johnson, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

- 14 -